William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff
Intervenors International Snowmobile Manufacturer's Association,
American Council of Snowmobile Associations,
BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| ) |  |
| GREATER YELLOWSTONE COALITION, et al. ) |  |
| ) |  |
| Plaintiffs, ) |  |
| ) |  |
| v. ) | Case No. 1:07-cv-02111 (EGS) |
| ) |  |
| KEMPTHORNE, et al. ) |  |
| ) |  |
| Defendants, ) |  |
| ) |  |
| and ) | MOTION TO INTERVENE |
| ) |  |
| THE INTERNATIONAL SNOWMOBILE ) |  |
|    MANUFACTURER'S ASSOCIATION, ) |  |
|    1640 Haslett Road, Suite 170 ) |  |
|    Haslett, Michigan 48840 ) |  |
| ) |  |
| THE AMERICAN COUNCIL OF SNOWMOBILE ) |  |
|    ASSOCIATIONS, ) |  |
|    271 Woodland Pass, Suite 216 ) |  |
|    East Lansing, Michigan 48823 ) |  |
| ) |  |
| THE BLUERIBBON COALITION, ) |  |
|    4555 Burley Drive, Suite A ) |  |
|    Pocatello, Idaho 83202 ) |  |
| ) |  |
| TERI MANNING, an individual, ) |  |
|    5450 Shoshone ) |  |
|    P.O. Box 1524 ) |  |
|    Jackson, Wyoming 83001 ) |  |

|  |  )  |
| --- | --- |
| Applicant Defendant and Cross-Claim<br>Plaintiff Intervenors | )<br>) |
| ——————————————————— | ) |
|  | ) |
| THE INTERNATIONAL SNOWMOBILE<br>    MANUFACTURER'S ASSOCIATION,<br>et al. | )<br>)<br>) |
|  | ) |
| Applicant Defendant and Cross-Claim<br>Plaintiff Intervenors, | )<br>) |
|  | ) |
| v. | ) |
|  | ) |
| KEMPTHORNE, et al. | ) |
|  | ) |
| Cross-Claim Defendants. | ) |
| ——————————————————— | ) |

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7 of this Court, the International Snowmobile Manufacturers Association ("ISMA"), American Council of Snowmobile Associations ("ACSA"), BlueRibbon Coalition ("BRC") and individual Terri Manning (collectively "Applicant Intervenors") by and through counsel, hereby move to intervene on the side of Secretary of Interior Dirk Kempthorne, Director of the National Park Service Mary Bomar, and Director of the Intermountain Region of the U.S. Park Service Mike Snyder (collectively, the "Federal Defendants") with regard to the claims asserted by Plaintiffs Greater Yellowstone Coalition et al., and to assert cross-claims against the Federal Defendants.

Plaintiffs are attempting to prevent snowmobile access to Yellowstone National Park by challenging the National Park Service's ("NPS's") winter use regulations, promulgated in 2007, for Yellowstone National Park, Grand Teton National Park, and the John D. Rockefeller, Jr., Memorial Highway.  Applicant Intervenors should be permitted to intervene in this action as entities whose primary goals are to protect and promote snowmobiling, sales of snowmobiles, public education

regarding snowmobiling, and public access to National Park Service lands, specifically including Yellowstone National Park, by snowmobiles. As organizations dedicated to the promotion of snowmobiling and the snowmobiling industry, the promotion of snowmobiling as part of responsible conservation and management policies, and as organizations whose members enjoy snowmobiling in Yellowstone National Park, ISMA, ACSA, and the BRC have significant interests in this litigation that are not adequately represented by the current parties. As an individual who enjoys snowmobiling in Yellowstone National Park and, as past president of ACSA and the Wyoming Snowmobile Association who has dedicated much time and effort to the promotion of snowmobiling in Yellowstone National Park, Ms. Manning also has significant interests in this litigation that are not adequately represented by the current parties.

In addition, Applicant Intervenors ISMA and BRC have a long history of involvement in litigation related to the NPS's winter use regulations for Yellowstone National Park. ISMA and BRC have been parties to two prior related cases in this Court, <u>Fund for Animals v. Norton</u>, No. CIV.A. 02-2367 (EGS), 294 F. Supp. 2d 92 (D.D.C. 2003) (Sullivan, J.) (addressing challenge to NPS's 2003 winter use plan), and <u>Fund for Animals v. Norton</u>, No. 1:04-cv-1913 (EGS), 512 F. Supp. 2d 49 (D.D.C. 2007) (Sullivan, J.) (addressing challenge to NPS's 2004 temporary winter use plan and supporting document). In addition, ISMA and BRC participated as petitioners in the U.S. District Court for the District of Wyoming in a challenge to the NPS's 2001 winter use regulations, <u>see</u> <u>International Snowmobile Mfrs. Ass'n. v. Norton</u>, 304 F. Supp. 2d 1278, 1293 (D. Wyo. 2004), and are parties to the Settlement Agreement initially entered in that case. In addition to meeting all the legal criteria for intervention as of right, Applicant Intervenors have a history with very similar litigation that further supports their being granted intervention. Applicant Intervenors meet all of the criteria for intervention as of right and should be granted intervention as of right. Alternatively,

Applicant Intervenors, should be granted permissive intervention.

Pursuant to L.Cv.R. 7.1(m), undersigned counsel conferred with the parties' counsel regarding this Motion. Federal Defendants oppose Applicant Intervenors' intervention for purposes of Applicant Intervenors' cross-claims and intervention as of right in any aspect of this case. Federal Defendants do not oppose permissive intervention by Applicant Intervenors for purposes of defending against Plaintiffs' claims. Plaintiffs take no position on Applicant Intervenors' motion until such time as they have had an opportunity to review Applicant Intervenors' Motion, Memorandum in Support, and proposed pleading.

Applicant Intervenors respectfully refer the Court to the accompanying memorandum of points and authorities in support of their motion.

DATED:  March 20th, 2008

Respectfully submitted,

  /s/ William P. Horn
William P. Horn
D.C. Bar No. 375666
David E. Lampp
D.C. Bar No. 480215
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorney for Applicant Defendant Intervenors International Snowmobile Manufacturers Association, American Council of Snowmobile Associations, BlueRibbon Coalition, and Terri Manning*

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                 )
GREATER YELLOWSTONE COALITION, et al.  )
                 )
      Plaintiffs,          )
                 )
      v.             )     Case No. 1:07-cv-02111 (EGS)
                 )
KEMPTHORNE, et al.        )
                 )
      Defendants,       )
                 )     MEMORANDUM IN SUPPORT
      and           )     OF MOTION TO INTERVENE
                 )
THE INTERNATIONAL SNOWMOBILE   )
     MANUFACTURER'S ASSOCIATION,  )
     1640 Haslett Road, Suite 170    )
     Haslett, Michigan 48840     )
                 )
THE AMERICAN COUNCIL OF SNOWMOBILE )
     ASSOCIATIONS,        )
     271 Woodland Pass, Suite 216    )
     East Lansing, Michigan 48823   )
                 )
THE BLUERIBBON COALITION,    )
     4555 Burley Drive, Suite A    )
     Pocatello, Idaho 83202     )
                 )
TERI MANNING, an individual,    )
     5450 Shoshone        )
     P.O. Box 1524        )
     Jackson, Wyoming 83001    )

```
                                                    )
        Applicant Defendant and Cross-Claim        )
        Plaintiff Intervenors                      )
─────────────────────────────────────────────────)
                                                    )
THE INTERNATIONAL SNOWMOBILE                        )
        MANUFACTURER'S ASSOCIATION,                 )
        et al.                                      )
                                                    )
        Applicant Defendant and Cross-Claim        )
        Plaintiff Intervenors,                      )
                                                    )
        v.                                          )
                                                    )
KEMPTHORNE, et al.                                  )
                                                    )
        Cross-Claim Defendants.                     )
─────────────────────────────────────────────────)
```

Pursuant to Federal Rule of Civil Procedure 24 and the Local Rules of this Court, the International Snowmobile Manufacturers Association ("ISMA"), American Council of Snowmobile Associations ("ACSA"), BlueRibbon Coalition ("BRC") and individual Terri Manning (collectively "Applicant Intervenors") by and through counsel, hereby move to intervene on the side of Secretary of Interior Dirk Kempthorne, Director of the National Park Service Mary Bomar, and Director of the Intermountain Region of the U.S. Park Service Mike Snyder (collectively "Federal Defendants") for purposes of defending against the claims asserted by Plaintiffs Greater Yellowstone Coalition et al. ("Plaintiffs"). Applicant Intervenors also seek to assert cross-claims against the Federal Defendants as set forth in their Lodged Answer and Cross-Claims, filed contemporaneously herewith.

## INTRODUCTION

Plaintiffs are attempting to prevent limited snowmobile access to portions of the road system within Yellowstone National Park and other nearby units by challenging the National Park Service's ("NPS's") 2007 winter use regulations for Yellowstone National Park, Grand Teton National Park,

and the John D. Rockefeller, Jr., Memorial Highway.  Applicant Intervenors should be permitted to intervene in this action as organizations whose primary goals are to protect and promote snowmobiling, sales of snowmobiles, public education regarding snowmobiling, and public access to National Park Service lands, specifically including Yellowstone National Park, by snowmobiles.  As organizations dedicated to the promotion of snowmobiling and the snowmobiling industry, the promotion of snowmobiling as part of responsible conservation and management policies, and as organizations whose members enjoy snowmobiling in Yellowstone National Park, ISMA, ACSA, and the BRC have significant interests in this litigation that are not adequately represented by the current parties.  As an individual who enjoys snowmobiling in Yellowstone National Park and, as past president of ACSA and the Wyoming Snowmobile Association who has dedicated much time and effort to the promotion of snowmobiling in Yellowstone National Park, Ms. Manning also has significant interests in this litigation that are not adequately represented by the current parties.

Furthermore, two of the Applicant Intervenors, ISMA and BRC, have been parties to related litigation in the recent past.  ISMA and BRC have participated as parties in two related cases before this Court, Fund for Animals v. Norton, No. CIV.A. 02-2367 (EGS), 294 F. Supp. 2d 92 (D.D.C. 2003) (Sullivan, J.) (addressing challenge to NPS's 2003 winter use plan), and Fund for Animals v. Norton, No. 1:04-cv-1913 (EGS), 512 F. Supp. 2d 49 (D.D.C. 2007) (Sullivan, J.) (addressing challenge to NPS's 2004 temporary winter use plan and supporting document).  In addition, ISMA and BRC participated as petitioners in the U.S. District Court for the District of Wyoming in a challenge to the NPS's 2001 winter use regulations, see International Snowmobile Mfrs. Ass'n. v. Norton, 304 F. Supp. 2d 1278, 1293 (D. Wyo. 2004), and is a party to the Settlement Agreement initially entered in that case.  In addition to meeting all the legal criteria for intervention as of right, Applicant Intervenors have a history with very similar litigation that further supports their being

granted intervention.  If the Court declines intervention as of right, Applicant Intervenors, should be granted permissive intervention.

## SUMMARY OF FACTS
## AND PROCEDURAL HISTORY

I.     **Applicant Intervenors**

    A.     **International Snowmobile Manufacturers Association**

Headquartered in Haslett, Michigan,  ISMA is an organization of snowmobile manufacturers established in 1995 as an outgrowth of a larger organization founded in the 1960's.  (Exhibit 1, Klim Declaration ¶ 3, 4).  ISMA's purposes include promoting snowmobile use and policies that will benefit its snowmobile manufacturer members; preparing and disseminating information to its members regarding snowmobiling opportunities; expanding its membership; and fostering the growth of the sport of snowmobiling.  (Exhibit 1, ¶ 5).  ISMA members manufacture Best Available Technology ("BAT") snowmobiles and snowmobile parts that are used on the Yellowstone National Park road system pursuant to the 2007 regulations.   ISMA members also manufacture other snowmobiles.  (Exhibit 1, ¶ 6).

ISMA members rely on sales of their products to users of the National Park System, including Yellowstone.   (Exhibit 1, ¶ 6).   The snowmobile rental businesses in and around Yellowstone replace or update their BAT snowmobile fleets approximately every two to three years. (Exhibit 1, ¶ 7). This includes the purchase of new snowmobiles and snowmobile parts from ISMA members.

Plaintiffs here seek to invalidate the Final Environmental Impact Statement ("FEIS"), Record of Decision ("ROD"), and 2007 Final Rule regarding snowmobile access to Yellowstone.  See First Amended and Supplemented Complaint for Declaratory and Injunctive Relief (ECF Doc. No. 13)

("Amended Complaint") at p. 23.  Plaintiffs ultimately support a rule that prohibits all recreational snowmobile usage at Yellowstone.  Any reduction in snowmobile access to Yellowstone, whether temporary or permanent, will decrease snowmobile activities and reduce rental businesses' need to update and replace their snowmobile fleets.  (Exhibit 1 ¶ 7).  In addition, any such temporary or permanent elimination of access will cause potential individual purchasers not to purchase snowmobiles due to decreased opportunities to enjoy them.  (Exhibit 1 ¶ 7).  Additionally, decreased usage of existing snowmobiles will extend the life of the vehicles, thereby reducing sales of new snowmobiles and parts.  (Exhibit 1 ¶ 7).  Accordingly, Plaintiffs' relief sought in this litigation will, if obtained, directly impact ISMA members.

In addition, ISMA seeks intervention to challenge the 2007 Final Rule to the extent it decreases daily allowable snowmobile entries into Yellowstone National Park from 720 snowmobiles per day to 540 snowmobiles per day, and to the extent it requires snowmobilers entering Yellowstone National Park to be accompanied by a commercial guide.  The reduction in daily snowmobile entries to the Park means that fewer snowmobiles will be used on any given day, reducing the need to replace snowmobiles and snowmobile parts on a regular basis.  (Exhibit 1 ¶ 7).  The commercial guide requirement will discourage many snowmobilers who would otherwise ride in the Parks from doing so.  (Exhibit 1 ¶ 8).  The decreased opportunities to ride snowmobiles in the Parks and the discouragement that many riders will feel due to the guide requirement will result in less snowmobile use, which will extend the lives of currently owned snowmobiles and reduce the sales of new snowmobiles and snowmobile parts.  (Exhibit 1 ¶¶ 7, 8).  This will have adverse financial consequences for ISMA and its members.

ISMA has been involved in related litigation.  ISMA was also a party in two cases before this Court, one involving a challenge to the NPS's 2003 winter use plan, see Fund for Animals v. Norton,

No. CIV.A. 02-2367 (EGS), 294 F. Supp. 2d 92 (D.D.C. 2003), and another involving a challenge to the National Park Service's 2004 Finding of No Significant Impact concerning winter use in Yellowstone. See Fund for Animals v. Norton, No. 1:04-cv-1913 (Sullivan, J.) (Feb. 24, 2005 minute order granting ISMA's motion to intervene). (Exhibit 1 ¶ 9). In addition, ISMA was the petitioner in a case before the U.S. District Court for the District of Wyoming concerning the 2001 winter use regulations, see International Snowmobile Mfrs. Ass'n v. Norton, 304 F.Supp.2d 1278, 1293 (D. Wyo. 2004), and is a party to the Settlement Agreement initially entered in that case. (Exhibit 1 ¶ 9).

### B.    American Council of Snowmobile Associations

Headquartered in East Lansing, Michigan, ACSA is a national organization formed to unite the snowmobile community and provide a strong national voice to advocate for the interests of the millions of individuals across the United States who enjoy snowmobiling. (Exhibit 2, Jourdain Declaration, ¶ 4). ACSA seeks to promote snowmobile access to public and private lands across the United States and to preserve the sport of snowmobiling for the future. (Exhibit 2, ¶ 5). ACSA, on behalf of its members, has long sought to promote access and rights for the millions of snowmobilers across the United States, including access to Yellowstone National Park and other National Park Service lands. National Park Service policies regarding snowmobile access to Yellowstone National Park have direct impacts on ACSA and its members.

Plaintiffs here seek to invalidate the FEIS, ROD, and 2007 Final Rule. See First Amended and Supplemented Complaint for Declaratory and Injunctive Relief (ECF Doc. No. 13) at p. 23. Plaintiffs ultimately support a rule that prohibits recreational snowmobile usage at Yellowstone. Reducing snowmobile access to Yellowstone permanently or even temporarily will negatively impact the ability of ACSA's members to enjoy snowmobiling in the Parks. (Exhibit 2 ¶ 7). Access

to federal lands like the Parks for ACSA's snowmobiler members is precisely the type of issue in which ACSA is involved on behalf of its members.  (Exhibit 2 ¶ 5).

ACSA members enjoy snowmobiling in the Parks and have done so for many years.  (Exhibit 2 ¶¶ 6, 8).  Reduced numbers of recreational snowmobiles allowed into Yellowstone National Park, as imposed by the NPS's 2007 Final Rule, negatively impacts ACSA members' ability to enjoy snowmobiling in the Park because it decreases the likelihood that they will be able to ride in the Park.  (Exhibit 2 ¶ 7).   In addition, ACSA members have historically ridden snowmobiles in the Parks without commercial guides when permitted to do so.  (Exhibit 2 ¶ 8).  The 2007 Final Rule requires all recreational snowmobilers on portions of the Yellowstone National Park road system to ride with a commercial guide.  This imposes unnecessary expense and difficulty on ACSA members, many of whom know the road system well enough that a guide is unnecessary.  This further impairs ACSA members' ability to enjoy the Parks.  (Exhibit 2 ¶ 8).

### C.    BlueRibbon Coalition, Inc.

BRC is an Idaho non-profit organization headquartered in Pocatello, Idaho.  BRC represents over 1,000 businesses and organizations with approximately 600,000 members nationwide.  (Exhibit 3, Welch Declaration, ¶ 4).  BRC members use non-motorized and motorized means, including snowmobiles, to access federal lands throughout the United States, including Yellowstone National Park.  (Exhibit 3 ¶ 5).  BRC members include individuals and organizations that have economic and commercial interests in snowmobile opportunities in the Park.  (Exhibit 3 ¶ 9).  BRC has a long-standing interest in the protection of natural resources and regularly works with land managers to provide recreation opportunities, preserve resources, and promote cooperation between public land visitors.  (Exhibit 3 ¶ 6).  In addition, BRC educates its members and the general public about responsible motorized and non-motorized off-highway recreation.  (Exhibit 3 ¶ 6).  BRC is regularly

involved in, and deeply concerned with, maintaining the integrity and legal validity of the administrative process because its members are fundamentally affected by the outcome of NPS planning and rulemaking. (Exhibit 3 ¶ 6).

Plaintiffs here seek to invalidate the FEIS, ROD, and 2007 Final Rule. See First Amended and Supplemented Complaint for Declaratory and Injunctive Relief (ECF Doc. No. 13) at p. 23. Plaintiffs ultimately support a rule that prohibits recreational snowmobile usage in Yellowstone. BRC members will be adversely affected by eliminating or restricting, temporarily or permanently, recreational snowmobile access to Yellowstone. (Exhibit 3 ¶¶ 7-10). Member organizations and individuals with commercial interests in the winter recreation and tourism industry have invested significant time and funds in their operations, including, but not limited to, snowmobile fleets and promotion of snowmobiling. (Exhibit 3 ¶¶ 9-10). Those members will suffer lost revenue resulting from the prohibition of snowmobile use in the Parks, significantly reduced use of snowmobiles, and markedly fewer winter visitors. (Exhibit 3 ¶ 10).

Individual BRC members have regularly visited and traveled via snowmobile in Yellowstone for many years and have definite plans to do so for many years to come, if permitted. (Exhibit 3 ¶ 7). Many BRC members have historically ridden snowmobiles in Yellowstone without a commercial guide when allowed, and would do so in the future. (Exhibit 3 ¶ 8). Reduced daily snowmobile entries and the commercial guide requirement impair BRC members' ability to enjoy the Parks via snowmobile. (Exhibit 3 ¶ 8). BRC should be granted intervention to protect its members' interests in snowmobiling in Yellowstone National Park and doing so without a commercial guide. (Exhibit 3 ¶¶ 7, 8).

BRC also has directly participated in related litigation. BRC was a party in two related cases before this Court, Fund for Animals v. Norton, 294 F.Supp.2d 92 (D.D.C. 2003) (involving a

challenge to the 2003 winter use regulations), and Fund for Animals v. Norton, No. 1:04-cv-1913

(Sullivan, J.), 512 F. Supp. 2d 49 (D.D.C. 2007) (Feb. 24, 2005 minute order granted BRC's motion

to intervene) (involving a challenge to the National Park Service's 2004 Finding of No Significant

Impact concerning winter use in Yellowstone).  In addition, BRC was the petitioner in a case before

the United States District Court for the District of Wyoming, International Snowmobile Mfrs. Ass'n.

v. Norton, 304 F.Supp.2d 1278, 1293 (D. Wyo.  2004), concerning the 2001 winter use regulations,

and was a party to the Settlement Agreement initially entered in that case.  (Exhibit 3 ¶ 12).

>   **D.     Teri Manning**

Teri Manning is an individual who regularly engages in recreational snowmobiling in

Yellowstone National Park.  (Exhibit 4, Manning Declaration, ¶ 7).  Ms. Manning is the past

President of ACSA and the Wyoming State Snowmobile Association.  (Exhibit 4 ¶¶ 3, 4).  She has

dedicated significant time and effort to promoting the sport of snowmobiling and snowmobilers'

access to federal lands specifically including the lands at issue in this case.  (Exhibit 4 ¶ 8).

Ms. Manning lives in Jackson, Wyoming, approximately 30 miles south of Grand Teton

National Park and approximately 50 miles from the southern boundary of Yellowstone National

Park.  (Exhibit 4 ¶ 6).  Ms. Manning has ridden snowmobiles in the Parks for decades and intends to

do so in the future.  (Exhibit 4 ¶ 7).  In addition, Ms. Manning has historically ridden a snowmobile

in the Parks without a commercial guide when allowed to do so, and would like to ride without a

commercial guide in the future.  (Exhibit 4 ¶ 10).  A commercial guide requirement is expensive,

burdensome, and completely unnecessary for someone like Ms. Manning who has ridden in the

Parks for many years without a guide and knows the area well.  (Exhibit 4 ¶ 10).  The reduced daily

snowmobile entry limit in the 2007 Final Rule decreases Ms. Manning's opportunities to ride in the

Parks, and the commercial guide requirement imposes additional unnecessary burden and expense.

Accordingly, the 2007 Final Rule directly impairs Ms. Manning's ability to enjoy the Parks.

## II.    Yellowstone National Park

Yellowstone National Park was created in 1872 and "dedicated and set apart as a public park or pleasuring ground for the benefit and enjoyment of the people." 16 U.S.C. § 21. Yellowstone is part of the National Park System and is governed by the 1916 National Park Organic Act, which provides a singular "fundamental purpose" for all park units to conserve resources therein and provide for public use and enjoyment. 16 U.S.C. § 1.

Yellowstone's historic road system provides five entrances and assures vehicular access to numerous features of Yellowstone Park. (Exhibit 4, 2004 Temporary EA, at 45). Over 1.8 million automobiles, buses, trucks and motorcycles use this road system each year and snowmobiles constitute approximately three percent (3%) of total vehicular use. Even with this extensive road system, over ninety-nine percent (99%) of the Park has no road access or is Congressionally-designated wilderness. NPS has permitted snowmobiles to enter the Park since 1963. In 1968, the Park Service established a formal winter use policy that limited snowmobile use to the road system. Since then, snowmobile access has been subject to a series of winter use plans and environmental reviews. Off-road use of snowmobiles remains prohibited in the Park. See 36 C.F.R. § 7.13(*l*)(1)(iii), (*l*)(7).

## III.    2001 Winter Use Plans

In January 2001, the NPS issued a final rule to govern winter use activities in the Parks. See 66 Fed. Reg. 7260 et seq. (the "2001 Snowmobile Ban Rule"). The 2001 Snowmobile Ban Rule permanently prohibited traditional snowmobile use in the Parks. ISMA, the BRC, and other parties filed suit in the Wyoming District Court challenging the legal validity of the 2001 Snowmobile Ban Rule. See International Snowmobile Mfrs. Ass'n. v. Norton, 304 F.Supp.2d 1278, 1283 (D. Wyo.

2004).

In June 2001, ISMA, the BRC, the other plaintiffs, and the Federal Defendants entered into a settlement agreement in which the NPS agreed to prepare a supplemental environmental impact statement ("SEIS") that considered the benefits of new, cleaner, quieter snowmobiles and, if appropriate, to issue a new final rule to govern winter use in the Parks. The Wyoming plaintiffs reserved the right to re-open the case in the Wyoming District Court if the NPS failed to comply with the terms of the settlement agreement.

## IV.    2003 Winter Use Plans

Pursuant to the settlement agreement, the NPS completed the SEIS in March 2003 and adopted a final rule in December 2003 governing winter use activities, including recreational snowmobiling, in the Parks. This supplemental statement was tiered off the 2000 EIS that was a basis for the 2001 Snowmobile Ban Rule. The Fund for Animals ("FFA") and the Greater Yellowstone Coalition ("GYC") filed, in this Court, a challenge to the validity of the 2003 Final Rule and related NEPA documents. On December 16, 2003, the D.C. Court vacated the 2003 Final Rule and its related ROD and SEIS, remanded them to the NPS, and re-instated the 2001 Snowmobile Ban Rule during the course of the remand. See Fund for Animals v. Norton, 294 F.Supp.2d 92, 115 (D.D.C. 2003).

## V.    Re-Opened Wyoming Litigation Concerning the 2001 Winter Use Plans

After this Court reinstated the 2001 Rule, ISMA and the State of Wyoming moved successfully to re-open the Wyoming litigation. See Int'l Snowmobile Mfrs. Ass'n. v. Norton, 304 F.Supp.2d at 1284. The Wyoming District Court preliminarily enjoined the NPS from implementing the 2001 regulation and directed the NPS to develop winter use rules for the remainder of the 2003-2004 season that were "fair and equitable" to all parties. See id. at 1293. Accordingly, the NPS

revised its compendia to allow, *inter alia*, up to 720 guided "Best Available Technology" snowmobiles in Yellowstone each day.  See 72 Fed. Reg. 70782.  On October 14, 2004, the Wyoming District Court vacated the 2001 Snowmobile Ban Rule and its related 2000 EIS and ROD and remanded the rule to the agency.  See Int'l Snowmobile Mfrs. Ass'n v. Norton, 340 F. Supp. 2d 1249 (D. Wyo. 2005).

## VI.    Amended Judgment and Order of this Court

On June 30, 2004, after the Wyoming District Court enjoined the Federal Defendants from implementing the 2001 Rules, this Court relieved the Federal Defendants' from the Court's prior judgment requiring Federal Defendants to implement the 2001 Winter Use Plans.  However, the Court ordered the NPS to "promulgate a new Rule governing the 2004-2005 winter use season, not inconsistent with this Court's December 16, 2003 Opinion and Order."  Memorandum Opinion and Order (June 30, 2004), at 10.

## VII.    2004 Temporary Winter Use Plans

Recognizing that a comprehensive new environmental impact statement could not be completed before the 2004-2005 winter season, NPS began to develop temporary winter use plans to govern winter use during that and two subsequent seasons while it developed an EIS on winter use and prepared new long-term winter use regulations.  69 Fed. Reg. 65348; 36 C.F.R. Part 7 (Nov. 10, 2004) ("2004 Temporary Regulations").  The Park Service issued its Temporary Winter Use Plans Environmental Assessment ("2004 EA") in August 2004, which explored several alternatives ranging from no snowmobile use to up to 950 snowmobiles in Yellowstone and Grant Teton National Parks and John D. Rockefeller, Jr., Memorial Parkway.  See Attachment B (Excerpts of Temporary EA).  In September 2004, the Park Service published a Proposed Rule that would implement the preferred alternative in the EA.  See 69 Fed. Reg. 54072 *et seq.* (Sept. 7, 2004).

The NPS then issued a Finding of No Significant Impact ("2004 FONSI") on November 4, 2004, and the final 2004 Temporary Regulations on November 10, 2004.  <u>See</u> 69 Fed. Reg. 65348 (Nov. 10, 2004); 36 C.F.R. Part 7.  The 2004 Temporary Regulations were intended to govern winter use of the Parks for the next three winter seasons, 2004-2005, 2005-2006, and 2006-2007, while the NPS prepared an EIS and long-term winter use regulations.  The 2004 Temporary Regulations limited daily snowmobile entries into Yellowstone National Park to 720 snowmobiles, which must meet "Best Available Technology" emission and sound standards and be accompanied by a commercial guide.  Additionally, only 140 daily snowmobile entries were permitted into Grand Teton National Park and the John D. Rockefeller, Jr. Memorial Parkway combined.  69 Fed. Reg. 65349 (Nov. 10, 2004).

## VIII.   Challenge to 2004 Temporary Regulations

The Fund for Animals filed a lawsuit on November 4, 2004, challenging the 2004 FONSI, and then filed an Amended Complaint on December 15, 2004 to include a challenge to the 2004 Temporary Regulations.  Specifically, the Fund for Animals claimed that the 2004 FONSI and Temporary Regulations did not adequately explain the NPS's decision to continue to groom Yellowstone's road system as it had for decades, and did not include a 'no road grooming' alternative, in violation of the National Park Service Organic Act, the Yellowstone National Park Act, prior orders of this Court, NPS management policies, NEPA, and the Administrative Procedure Act.  Additionally, the Fund for Animals claimed that the Fish and Wildlife Service's concurrence with the Park Service's determination that the 2004 Regulations were not likely to adversely affect endangered or threatened species violated the Endangered Species Act.  The Fund for Animals also contested the Park Service's denial of a 1999 Rulemaking Petition from Bluewater Network, which sought to ban all road grooming in all National Parks.

On December 8, 2004, Congress and the President enacted the Appropriations Act for fiscal

year 2005, which included the following language:

> Notwithstanding any other provision of law, the National Park Service final winter
> use rules published in Part VII of the Federal Register for November 10, 2004, 69
> Fed. Reg. 65348, et seq., shall be in force and effect for the winter use season of
> 2004-2005 that commences on or about December 15, 2004.

See Pub.L. 108-447. Accordingly, the NPS implemented the 2004 Temporary Winter Use Plans in

Yellowstone in winter 2004-2005. Similar language in later appropriations legislation directed

implementation of the 2004 Temporary Winter Use Plan for winter 2005-2006 and winter 2006-

2007. See 72 Fed. Reg. 70782.

This Court, on September 24, 2007, issued a Memorandum Opinion finding that the Fund for

Animals' motion for summary judgment as to the 2004 Temporary Winter Use Plan was moot, as its

effects did not extend beyond winter 2006-2007. See Fund for Animals v. Norton, 512 F. Supp. 2d

49, 53 (D.D.C. 2007). In the same Memorandum Opinion, the Court upheld the Interior

Department's denial of Bluewater Network's rulemaking petition. Id. at 54.

## IX.    2007 DEIS, FEIS, and ROD and Plaintiffs' Challenge

On April 2, 2007, the NPS published a notice of availability of a draft environmental impact

statement ("DEIS") for the Winter Use Plans for Yellowstone and Grand Teton National Parks and

John D. Rockefeller, Jr., Memorial Highway. See 72 Fed. Reg. 15720 et seq. (Apr. 2, 2007).

On September 25, 2007, the NPS published a notice of availability of its final environmental

impact statement ("FEIS") for the Winter Use Plans. See 72 Fed. Reg. 54456 (Sept. 25, 2007). The

FEIS was intended to address, inter alia, issues raised in response to previous bouts of litigation

regarding winter use plans. These include historic conditions leading to the need for a winter use

plan, changes to park conditions over time, comparisons between recent and historic conditions, road

grooming and wildlife movement, compliance with NPS mandates, mitigation measures, snowcoach use, guiding requirements, and public and cooperating agency involvement.  The FEIS examined seven alternatives,[1] including continuing the 2004 Temporary Winter Use Plan, which allowed 720 snowmobiles and 78 snowcoaches per day in Yellowstone, and a "revised preferred alternative" of allowing 540 snowmobiles and 83 snowcoaches per day with stricter Best Available Technology ("BAT") requirements throughout most of the Park and guide requirements throughout the Park for all recreational snowmobilers.  Four of the seven alternatives examined in the FEIS, including the continued 2004 temporary plan and the revised preferred alternative, included requiring commercial guides for 100 percent of recreational snowmobiles entering Yellowstone National Park.[2]

On November 20, 2007, the NPS officially approved a Record of Decision ("ROD") adopting the revised preferred alternative, including its provision for access for 540 snowmobiles per day in Yellowstone to limited portions of the historic road system within the Park.  On November 21, 2007, Plaintiffs filed their original Petition for Review (ECF No. 1) in this Court, asserting multiple claims for violation of the Administrative Procedure Act and the National Environmental

---

[1] The seven alternatives examined in the FEIS with regard to Yellowstone National Park are:  (1) continuing the 2004 Temporary Winter Use Plan, which allows 720 snowmobiles and 78 snowcoaches per day in Yellowstone; (2) closing Yellowstone to snowmobiles and expanding snowcoach access to 120 snowcoaches per day; (3) eliminating all road grooming in Yellowstone except for the road from the South Entrance to Old Faithful, and either (a) reducing access to 120 snowmobiles and 20 snowcoaches per day, or (b) eliminating all snowmobile and snowcoach use in Yellowstone; (4) expanding recreational use to 1025 snowmobiles and 115 snowcoaches per day; (5) reducing recreational use to 540 snowmobiles and 83 snowcoaches per day, while imposing stricter technology requirements on snowmobiles accessing the Park; (6) reducing snowmobile use to 350 vehicles per day with Best Available Technology requirements, allowing 100 snowcoaches per day, and allowing up to 100 commercial wheeled vehicles per day; and (7) allowing 540 snowmobiles per day with limited Best Available Technology requirements, and allowing 83 snowcoaches per day (the "revised preferred alternative").

[2] The FEIS's other three alternatives included an alternative requiring 80 percent of recreational snowmobiles to be accompanied by a commercial guide, an alternative requiring 75 percent of recreational snowmobiles to be accompanied by a commercial guide, and an alternative prohibiting

Policy Act.  Plaintiffs filed their First Amended Petition for Review of Agency Action (ECF Doc. No. 7) (the "Amended Petition") on December 18, 2007.  Plaintiffs seek a declaration that the 2007 FEIS, ROD, and winter use plan are unlawful, and to have the Court set them aside.  See Amended Petition (ECF Doc. No. 7) at p. 26.  Plaintiffs allege that any agency action to allow recreational snowmobile usage in the Parks is contrary to law, agency regulations, and applicable Executive Orders, and  is arbitrary and capricious under the Administrative Procedure Act.  See Amended Petition at pp. 19-23.  In addition, Plaintiffs allege that the FEIS and ROD fail to comply with the NPS's obligations under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*  Accordingly, Plaintiffs seek a winter use plan that does not allow any recreational snowmobile access to limited portions of the Yellowstone road system.

## ARGUMENT

At issue in Applicant Intervenors' present motion is whether they, as organizations dedicated to the promotion and expansion of the sport of snowmobiling, snowmobile access to federal lands specifically including Yellowstone National Park (as well as Grand Teton National Park and the John D. Rockefeller, Jr. Memorial Highway), and public access to federal lands for recreational purposes in general, should be permitted to intervene in this action that directly addresses those same issues.  Applicant Intervenors have participated as parties in most of the various lawsuits filed since 1997 by various parties regarding snowmobile usage in Yellowstone National Park.  Moreover, there is little doubt that Applicant Intervenors meet the requirements for intervention as of right and/or should be granted permissive intervention in this lawsuit.

**I.      Intervention as of Right Under Fed. R. Civ. P. 24(a)**

recreational snowmobiling in Yellowstone National Park altogether.

Applicant Intervenors are entitled to intervene as a matter of right. The Federal Rule of Civil Procedure 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As a threshold matter, an applicant for intervention as of right must show that it has standing under Article III of the U.S. Constitution to participate in the litigation as a party. See Military Toxics Project v. EPA, 146 F.3d 948, 953 (D.C. Cir. 1998). There are four additional prerequisites to intervention as of right: (1) there must be an "adequate interest"; (2) there must be a "possible impairment of that interest"; (3) the application must be timely; and (4) there must be a "lack of adequate representation of that interest by existing parties." Dimond v. District of Columbia, 792 F.2d 179, 193 (D.C. Cir. 1986); see also Nuesse v. Camp, 385 F.2d 694, 699 (D.C. Cir. 1967). As shown below, Applicant Intervenors meet all criteria for intervention as of right under Rule 24(a) and, therefore, intervention should be granted.

### A.    Applicant Intervenors Have Article III Standing

Under D.C. Circuit law, "a party seeking to intervene as of right must demonstrate that it has standing under Article III of the United States Constitution." County of San Miguel, Colorado v. MacDonald, 244 F.R.D. 36, 43 (D.D.C. 2007) (citing Military Toxics Project, 146 F.3d at 953). Applicant Intervenors have standing under Article III to intervene as of right in this litigation and to pursue their cross-claims against Federal Defendants.[3]

---

[3] As noted below, see infra at Part I.B, Applicant Intervenors' demonstration of standing is also sufficient to meet Federal Rule of Civil Procedure 24's requirement of a sufficient "interest" to justify intervention as of right.

In order to demonstrate standing, a party must show that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Friends of the Earth v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000).  Furthermore, an association has standing to sue on its members' behalves if:

> (1) [A]t least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.

County of San Miguel, 244 F.R.D. at 43 (quoting Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002)).

Here, ISMA, ACSA, and BRC clearly have standing if their individual members would have standing.  ACSA and BRC seek to protect their members' access to the Parks for recreational snowmobiling free from daily entry limits and commercial guide requirements that may, as a practical matter, impair their recreation.  ISMA seeks to protect its members' financial interests in a robust snowmobiling community in and around the Parks and the resulting need of businesses and individuals to purchase more snowmobiles and snowmobile parts.  These interests are precisely the reasons these organizations exist; therefore these interests are clearly "germane" to these organizations' purposes.  Furthermore, there is no reason individual members of the Applicant Intervenor organizations should participate in this litigation as individuals.  Indeed, ISMA, ACSA, and BRC fill this role as advocates for interests shared by their individual members, interests it may be financially impractical for those individual members to litigate on their own.  Therefore, as long as at least one individual member of each of the Applicant Intervenor organizations would have

standing, the organizations have standing.

Here, members of ACSA and BRC would have standing to participate in this litigation because they have injuries in fact that are actual and imminent, not merely conjectural, fairly traceable to the 2007 Final Rule, and redressable by a favorable decision from this Court. ACSA and BRC members have historically, and would like to continue to, use the Parks for recreational snowmobiling during the winter, and would like to do so without being accompanied by a commercial guide. See supra at 6-9, Summary of Facts, Parts I.B, I.C. The 2007 Final Rule impairs this interest, as it applies an unnecessarily restrictive daily limit for snowmobile entries into the Parks, and requires all recreational snowmobiles to be accompanied by a commercial guide, at significant expense to Park visitors. The harms to ACSA and BRC members are, therefore both financial and recreational. It is beyond dispute that financial injuries can satisfy Article III's injury in fact requirement. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 154 (1970). Even absent financial injury, however, the injuries to ACSA and BRC members' interests in recreational snowmobile access to the Parks would be sufficient. "Harms to aesthetic and recreational enjoyment of parks are sufficient to support injury for Article III purposes as long as they are supported by a description of the particularized injury[.]" Sierra Club v. Mainella, 459 F. Supp. 2d 76, 91 (D.D.C. 2006). ACSA and BRC members' injuries are directly traceable to NPS policies, including the 2007 Final Rule, that directly impose the injurious restrictions, and their injuries would be redressed if this Court were to agree with Applicant Intervenors, rule that the 2007 Final Rule's reduced daily snowmobile limit and commercial guide requirements are unlawful. On the other hand, ACSA and BRC members' injuries would be exacerbated if Plaintiffs were successful in obtaining a winter use plan that does not allow snowmobiling at all. Accordingly, ACSA and BRC have demonstrated standing sufficient to justify

intervention as of right (and, as discussed below, meet the "interest" requirement under Federal Rule of Civil Procedure 24).

ISMA members clearly also have Article III standing and therefore, as noted above, ISMA has organizational standing.  ISMA members are directly and significantly financially impacted by the 2007 Final Rule and by the relief Plaintiffs seek.  Reduced daily snowmobile limits for the Parks means fewer snowmobiles will be purchased and fewer snowmobile parts will be needed.  This will lead to reduced revenues for ISMA members.  Furthermore, if Plaintiffs are successful in obtaining a policy prohibiting snowmobiling in the Parks, ISMA's members' injuries will be exacerbated as the demand for snowmobiles and snowmobile parts in and around the Parks will be virtually eliminated.  Such an economic injury is sufficient to confer standing on ISMA members and, therefore, on ISMA as an organization.  See Association of Data Processing Service Organizations, 397 U.S. at 154.

In addition, ISMA and BRC had standing to challenge the NPS's 2001 Snowmobile Ban Rule in the U.S. District Court for the District of Wyoming.  See International Snowmobile Mfrs. Ass'n. v. Norton, 304 F.Supp.2d 1278, 1283 (D. Wyo. 2004).  There is no reason why the standing analysis here should be any different.  As in that case, where ISMA and BRC had Article III standing to challenge an NPS-promulgated restriction on recreational snowmobiling in Yellowstone National Park.  ISMA and BRC have standing here to challenge the NPS's 2007 Rule restricting recreational snowmobiling in Yellowstone National Park.

Finally, Applicant Intervenor Teri Manning also has Article III standing.  Ms. Manning lives near the Parks and has ridden snowmobiles in the Parks for decades, without a guide prior to the enactment of commercial guide requirements.  See supra at 9-10, Summary of Facts, Part I.D.  Ms. Manning would like to continue to ride in the Parks and would like to do so without a commercial

guide.  See id.  The 2007 Final Rule reduces her opportunities to ride in Yellowstone National Park, and eliminates her ability to do so without a commercial guide.  As noted above, such impairment of recreational interests constitutes an injury in fact for purposes of standing.  Sierra Club v. Mainella, 459 F. Supp. 2d at 91.  Ms. Manning's injury is directly traceable to the NPS 2007 Final Rule which contains the reduced daily snowmobile limits and the commercial guide requirement, and will be redressed by a decision from this Court holding the 2007 Final Rule unlawful.  On the other side, her injury will be exacerbated if Plaintiffs obtain the relief they seek, including a winter use plan prohibiting recreational snowmobile use in Yellowstone National Park.

### B. Applicant Intervenors Have Substantial Interests in this Case

Applicant Intervenors have substantial interests in winter use management of Yellowstone National Park, and particularly in the Winter Use Plan approved by the NPS in its 2007 ROD, which is the subject of Plaintiffs' challenge.  "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  Nuesse, 385 F.2d at 700.  When parties represent private interests properly safeguarded by formal participation in litigation, the United States Supreme Court has broadly interpreted the range of interests sufficient to justify intervention.  See Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 135-36 (1967) (holding that the interest claimed by the applicant in intervention does not have to be a direct interest in the property or transaction at issue, provided that it is an interest that would be impaired by the outcome).  In the D.C. Circuit, an economic interest dependent upon the outcome of litigation squarely meets the Rule 24(a)(2) test.  See Dimond, 792 F.2d at 192.  In addition, by establishing Article III standing, Applicant Intervenors also establish the requisite level of interest in this litigation to support intervention as of right.  See Jones v. Prince George's County, Maryland, 348 F.3d 104, 1018-19 (D.C. Cir. 2003).

Applicant Intervenors have substantial interests in the instant lawsuit. The 2007 Final Rule that is a subject of Plaintiffs' challenge is unduly restrictive of recreational snowmobiling in Yellowstone National Park in that it further reduces that number of snowmobiles allowed into the park each day beyond the limits already in place, and it requires all snowmobiles entering the Park to be accompanied by a commercial guide. As discussed supra at Part I.A, these restrictions directly impact the interests of the Applicant Intervenors, who are organizations dedicated to recreational snowmobiling, sales of snowmobiles and snowmobile parts, and businesses in the vicinity of the Parks that rely on snowmobiling for their winter revenue.

Furthermore, the Plaintiffs seek, among other things, a ruling from this Court invalidating and setting aside the FEIS, ROD, and 2007 Final Rule, see Amended Complaint at p. 23, and ultimately seek a winter use plan that does not allow any recreational snowmobiling in the Parks. If Plaintiffs are successful, Applicant Intervenors' interests in recreational use of the Parks for snowmobiling will be further impaired beyond the impairment already caused by the 2007 Final Rule. First, under the 2007 Final Rule, if Plaintiffs prevail, the members of ACSA and BRC who plan to visit Yellowstone for snowmobiling after this season may be unable to do so or unable to do so without being accompanied by a commercial guide. Thus, these individuals would lose their ability to see and enjoy many areas of the Park via snowmobile and would be unable to do so without a commercial guide, which many of them otherwise would not hire. Second, under the 2007 Final Rule, members of the Applicant Intervenors who sell snowmobiles and/or operate snowmobiling-related businesses in the gateway communities will suffer significant financial hardship due to decreases in the number of snowmobiler customers in the winter and corresponding loss of revenue. If Plaintiffs ultimately obtain what they seek – a prohibition on recreational snowmobiling in the Parks – these impacts on Applicant Intervenors will be exacerbated. Many

gateway community businesses will not be able to remain in business at all, recreational snowmobilers will lose any opportunity to ride in the Parks, and snowmobile and snowmobile parts manufacturers will suffer a drastic drop in sales.

Over the last several years, winter use in Yellowstone National Park has been a hotly contested and litigated issue, with certain of the Applicant Intervenors remaining involved at many stages. ISMA and BRC were parties in related Wyoming litigation and litigation in this Court. All Applicant Intervenors have significant interests in continuing their active participation in winter use management of the Park to ensure that their interests in snowmobiling in and around the Parks are not impaired.

### C.     Disposition of this Proceeding May, as a Practical Matter, Impair or Impede Applicant Intervenors' Ability to Protect Their Interests

Applicant Intervenors represent the regulated users of Yellowstone National Park for recreational snowmobiling purposes, sellers of snowmobiles and snowmobile parts, and businesses in gateway communities that depend on snowmobiling for their financial well-being. Therefore all the Applicant Intervenors directly benefit from recreational snowmobiling in Yellowstone. As such, Applicant Intervenors likely would be adversely affected if the Court sets aside the 2007 ROD, FEIS, and Winter Use Plan and enjoins the 2007 Final Rule's implementation in favor of the more restrictive regulations Plaintiffs seek. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-562 (1992) (holding that when the plaintiff is the object of governmental regulation, there is "little question that the [government] action or inaction has caused him injury . . . . .").

Furthermore, if Plaintiffs prevail, the Court will establish a precedent potentially affecting all winter use on Federal lands and almost certainly affecting all future winter access to Yellowstone. The potential stare decisis effect of such a judgment, even if persuasive rather than preclusive, also

provides sufficient impairment to justify intervention.  See American Train Dispatchers v. I.C.C., 26

F.3d 1157, 1162 (D.C. Cir. 1994); Costle, 561 F.2d at 910.  Indeed, Applicant Intervenors should be

allowed to intervene to protect their interests which are directly implicated by Plaintiffs' claims here.

### D.    Applicant Intervenors' Motion is Timely

This suit is in the earliest stages and this motion is clearly timely.  The timeliness of a request

to intervene is submitted to the sound discretion of the Court, and "[t]imeliness is to be determined

from all the circumstances."  NAACP v. New York, 413 U.S. 345, 366 (1973).  Relevant factors

include the age of the case, whether responsive pleadings or dispositive motions have been filed, the

purpose for which intervention is sought, and whether intervention will prejudice existing parties.

Id. at 366-69; NRDC v. Costle, 561 F.2d 904, 907-08 (D.C. Cir. 1977).

Plaintiffs filed their original Petition for Review of Agency Action on November 20, 2007.

Plaintiffs filed their Amended Complaint more recently, on January 11, 2007.  Federal Defendants

filed an answer to Plaintiffs' Amended Complaint on February 8, 2008.   In addition, the Parties

have noted appearances, the Federal Defendants have moved to consolidate this case with a related

case,[4] and the Parties have conferred regarding production of the administrative record, but

otherwise nothing has happened.  No dispositive motions have been filed or decided.

The short amount of time that has elapsed following initiation of this action, as well as the

absence of any consideration of substantive issues, establish the timeliness of the requested

intervention.  Furthermore, in light of the early stage of proceedings, and Applicant Intervenors'

determination to abide by any reasonable schedule set by the Court, no party will suffer prejudice if

---

[4] Federal Defendants filed a Motion to Consolidate this case with National Parks Conservation
Association v. U.S. Department of the Interior, No. 1:07-cv-2112 (EGS) in this Court.  Applicant
Intervenors here have already filed a Motion to Intervene and supporting documents in that case
(ECF Doc. No. 15 in that case).  Applicant Intervenors do not oppose consolidation of the two cases,

intervention is granted.    Applicant Intervenors' motion to intervene meets the timeliness requirement.

E.      The Existing Parties Do Not Adequately Represent the Intervenors' Interests

The Court should grant the Applicant Intervenors' request for intervention because the Federal Defendants do not adequately represent Applicant Intervenors' interests.  An applicant need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  Trbovich v. United Mine Workers, 404 U.S. 528, 538, n. 10 (1972).  When a managing agency:

> [H]as no financial stake in the outcome of the challenge . . . [a private party's] application for intervention thus falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances.

Dimond, 792 F.2d at 192.  Private parties can often "provide a very helpful supplement to the defense by the [federal] authority [because] 'there is a likelihood that the [private parties] will make a more vigorous presentation of the economic side of the argument than would the [federal authority].'"  Costle, 561 F.2d at 912 and n. 41 (internal quotation omitted).[5]

Third parties are often uniquely situated to raise issues that the Federal government is unable or unwilling to assert.  Even when a third party asserts a general interest that the government is presumed to represent, the necessity that the government will balance competing private interests is sufficient to meet the minimal burden of showing inadequate representation.  See Mausolf v. Babbitt, 85 F.3d 1295, 1303-04 (8th Cir. 1996).

---

but seek full involvement as party-intervenors in all remaining phases of the consolidated case.
[5] Courts have allowed intervention based on, among other things, potential inadequate representation by the governmental entity in numerous other cases.  See, e.g., In Re Sierra Club, 945 F.2d 776, 779-80 (4th Cir. 1991); Mille Lacs Band of Chippewa Indians v. State of Minnesota, 989 F.2d 994, 1000-01 (8th Cir. 1993); Meek v. Metro. Dade County, 985 F.2d 1471, 1478 (11th Cir. 1993); National

In this case, the Federal Defendants are charged with balancing all interests, including Plaintiffs' and others whose interests are directly adverse to Applicant Intervenors' interests. While the Federal Defendants likely will defend the FEIS, ROD and 2007 Winter Use Plan based on procedural and substantive compliance with the relevant statutes, as governmental entities, they will continue in their regulatory function regardless of the outcome of this lawsuit. Applicant Intervenors, on the other hand, risk impairment of important recreational activities and Park access and/or severe economic hardship including, in some cases, losing their businesses, if Plaintiffs are successful here. Moreover, Applicant Intervenors seek to assert cross-claims against the Federal Defendants challenging certain features of the 2007 Winter Use Plan; therefore it is not possible for the Federal Defendants to represent the Applicant Intervenors' interests in this matter.

As in the 2001 D.C. lawsuit in which ISMA and BRC intervened on behalf of the Federal Defendants, Applicant Intervenors not only will present the general interests of the public, they also possess unique concrete economic, contractual, and property interests in the outcome of this litigation and, therefore, will make a more vigorous presentation of the economic aspect of the argument than the Federal Defendants. See Forest Conservation Council v. U.S. Forest Service, 66 F.3d 1489, 1499 (9th Cir. 1995) ("Inadequate representation is most likely to be found when the applicants assert a personal interest that does not belong to the general public") (quoting 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995)).

Moreover, in the absence of intervention, and in light of the Federal Defendants' duty to balance competing values, the Federal Defendants could attempt to dispose of all or portions of Applicant Intervenors' interests in an attempt to negotiate a settlement encompassing the entire litigation. The Federal Defendants are not obligated to represent Applicant Intervenors' interests in

Wildlife Federation v. Hodel, 661 F. Supp. 473, 476 (E.D. Ky. 1987).

defense or settlement of this action.  Accordingly, unless Applicant Intervenors are granted intervention, their unique personal, commercial and governmental interests that they seek to represent in this case will be lost.

## II.    Intervenors Also Satisfy Rule 24(b) Permissive Intervention Criteria

If the Court declines intervention as of right, in the alternative Applicant Intervenors also request permissive intervention under Rule 24(b).  That Rule provides:

> Upon timely application anyone may be permitted to intervene in an action; . . . (2) when an applicant's claim or defense in the main action have a question of law or fact in common . . . . In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b).  Permissive intervention requires a substantially lower burden than intervention of right under Rule 24(a)(2).

Permissive intervention is appropriate here.  First, as previously discussed, this motion is timely.  Second, Applicant Intervenors' interests in the 2007 Final Rule, and winter use management in Yellowstone generally, involve questions of law or fact common to the issues to be resolved in this case.  Indeed, Applicant Intervenors intend to defend the procedural history of the 2007 ROD and FEIS for many reasons similar to the defenses they expect the Federal Defendants to assert, as well as to challenge the 2007 Final Rule for reasons not likely to be asserted by any of the existing parties.  Third, because this case is in the early stages and Applicant Intervenors intend to abide by all briefing schedules and deadlines imposed by the Court, intervention will not unduly delay this proceeding or unfairly prejudice the rights of the parties.

On the other hand, Applicant Intervenors' interests would be severely impacted without intervention, which weighs in favor of allowing intervention.  See generally American Train Dispatchers, 26 F.3d at 1162.  Accordingly, in the event that intervention as of right is denied,

permissive intervention is appropriate and should be granted.

## CONCLUSION

Plaintiffs' lawsuit challenging the FEIS, ROD, and 2007 Winter Use Plan severely threatens Applicant Intervenors' recreational, aesthetic, contractual, economic, real property, and governmental interests. Plaintiffs seek a winter use plan that flatly prohibits recreational snowmobile use in Yellowstone National Park. This would eliminate the mode of access preferred by tens of thousands of Yellowstone visitors each year. Although the Federal Defendants do not adequately represent, nor are they obligated to represent or defend Applicant Intervenors' interests, which are threatened by Plaintiffs' requested relief, Applicant Intervenors could conceivably suffer the future and possible preclusive effect of this Court's resolution of Plaintiffs' claims, and should be granted intervention to protect their interests.

In addition, Applicant Intervenors should be granted intervention to assert their cross-claims against Federal Defendants. The 2007 Final Rule directly impairs Applicant Intervenors' recreational, aesthetic, and financial interests to the extent it further reduces daily snowmobile entries into Yellowstone National Park and imposes a commercial guide requirement.

Accordingly, Applicant Intervenors' intervention as of right is appropriate and necessary to protect their substantial interests at stake in this litigation. In the alternative, Applicant Intervenors should be granted permissive intervention.

DATED: March 20th, 2008

Respectfully submitted,

 /s/ William P. Horn_____
William P. Horn
District of Columbia Bar No. 375666

David E. Lampp
District of Columbia Bar No. 480215
1155 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant Intervenors International Snowmobile Manufacturers Association, American Council of Snowmobile Associations, BlueRibbon Coalition, and Terri Manning*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
GREATER YELLOWSTONE COALITION, et al. )
                                              )
         Plaintiffs,                          )
                                              )
    v.                                        )    Case No. 1:07-cv-02111 (EGS)
                                              )
KEMPTHORNE, et al.                            )
                                              )
         Defendants,                          )
                                              )
         and                                  )    ORDER
                                              )
THE INTERNATIONAL SNOWMOBILE               )
         MANUFACTURER'S ASSOCIATION,          )
         1640 Haslett Road, Suite 170         )
         Haslett, Michigan  48840             )
                                              )
THE AMERICAN COUNCIL OF SNOWMOBILE )
         ASSOCIATIONS,                        )
         271 Woodland Pass, Suite 216         )
         East Lansing, Michigan  48823        )
                                              )
THE BLUERIBBON COALITION,                   )
         4555 Burley Drive, Suite A           )
         Pocatello, Idaho  83202              )
                                              )
TERI MANNING, an individual,                )
         5450 Shoshone                        )
         P.O. Box 1524                        )
         Jackson, Wyoming  83001              )
                                              )
         Applicant Defendant and Cross-Claim  )
         Plaintiff Intervenors                )
_____)
                                              )
THE INTERNATIONAL SNOWMOBILE               )
         MANUFACTURER'S ASSOCIATION,          )
         et al.                               )
                                              )
         Applicant Defendant and Cross-Claim  )
         Plaintiff Intervenors,               )

```
                                         )
        v.                               )
                                         )
KEMPTHORNE, et al.                       )
                                         )
        Cross-Claim Defendants.          )
_____)
```

Upon full consideration of Applicant Defendant and Cross-Claim Plaintiff Intervenors' Motion to Intervene, the entire record herein, and it appearing there is good cause therefore, on this _____ day of _____, 2008, it is hereby

ORDERED:  That Applicant Defendant and Cross-Claim Plaintiff Intervenors' Motion to Intervene is Granted; and it is

FURTHER ORDERED:  That the International Snowmobile Manufacturers Association, American Council of Snowmobile Associations, BlueRibbon Coalition, and Teri Manning are hereby granted Defendant Intervenor status; and it is

FURTHER ORDERED:  That the Applicant Defendant and Cross-Claim Plaintiff Intervenors' Proposed Answer and Cross Claims be deemed filed as of the date of this Order.  So ordered.

Date: _____, 2008.          _____
                                            Judge Emmet G. Sullivan
                                            U.S. District Court, District of Columbia

cc:

Barry A. Weiner
Guillermo A. Montero
Luther L. Hajek
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044


David S. Baron
Earthjustice
1625 Massachusetts Avenue, NW, Suite 702
Washington, DC  20036

Douglas L. Honnold
Sean M. Helle
Earthjustice
209 South Willson Ave.
Bozeman, MT  51715

William P. Horn
David E. Lampp
Birch, Horton, Bittner and Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 20th day of March, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means.  I further certify that I caused correct copies of the foregoing to be served by placing the same in the U.S. first class mail, postage prepaid, addressed as follows:

The Hon. Michael B. Mukasey
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530

Barry A. Weiner
Guillermo A. Montero
Luther L. Hajek
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044

Jeffrey A. Taylor, Esq.
United States Attorney for the District of Columbia
555 Fourth Street, NW
Washington, DC  20530

The Honorable Dirk Kempthorne
Secretary
United States Department of the Interior
1849 C Street, NW
Washington, DC  20240

The Honorable Mary Bomar
Director, National Park Service
1849 C Street NW
Washington, DC  20240

David S. Baron
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC  20036

Douglas L. Honnold
Sean M. Helle
Earthjustice
209 South Willson Ave.
Bozeman, MT  51715

  /s/ David E. Lampp
David E. Lampp

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
GREATER YELLOWSTONE COALITION, et al.  )
                                          )
    Plaintiffs,                          )
                                          )
    v.                                   )    Case No. 1:07-cv-02111 (EGS)
                                          )
KEMPTHORNE, et al.                        )
                                          )
    Defendants,                          )
                                          )
    and                                  )    DECLARATION OF JACK
                                          )    WELCH ON BEHALF OF THE
THE INTERNATIONAL SNOWMOBILE          )    BLUERIBBON COALITION, INC.
    MANUFACTURER'S ASSOCIATION,       )
    1640 Haslett Road, Suite 170         )
    Haslett, Michigan  48840             )
                                          )
THE AMERICAN COUNCIL OF SNOWMOBILE )    **EXHIBIT A**
    ASSOCIATIONS,                     )
    271 Woodland Pass, Suite 216         )
    East Lansing, Michigan  48823        )
                                          )
THE BLUERIBBON COALITION,                 )
    4555 Burley Drive, Suite A           )
    Pocatello, Idaho 83202               )
                                          )
TERI MANNING, an individual,              )
    5450 Shoshone                        )
    P.O. Box 1524                        )
    Jackson, Wyoming  83001              )
                                          )
    Applicant Defendant and Cross-Claim  )
    Plaintiff Intervenors                )
_____)
                                          )
THE INTERNATIONAL SNOWMOBILE          )
    MANUFACTURER'S ASSOCIATION,       )
    et al.                               )
                                          )
    Applicant Defendant and Cross-Claim  )
    Plaintiff Intervenors,               )
                                          )

v.                                              )
                                                )
KEMPTHORNE, et al.                              )
                                                )
     Cross-Claim Defendants.               )
_____)

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                  )
GREATER YELLOWSTONE COALITION, et al.  )
                                                  )
          Plaintiffs,                             )
                                                  )
          v.                                      )          Case No. 1:07-cv-02111 (EGS)
                                                  )
KEMPTHORNE, et al.                                )
                                                  )
          Defendants,                             )
                                                  )
          and                                     )          DECLARATION OF JACK
                                                  )          WELCH ON BEHALF OF THE
THE INTERNATIONAL SNOWMOBILE           )          BLUERIBBON COALITION,
          MANUFACTURER'S ASSOCIATION,  )          INC.
          1640 Haslett Road, Suite 170            )
          Haslett, Michigan  48840                )
                                                  )
THE AMERICAN COUNCIL OF SNOWMOBILE )
          ASSOCIATIONS,                           )
          271 Woodland Pass, Suite 216            )
          East Lansing, Michigan  48823           )
                                                  )
THE BLUERIBBON COALITION,              )
          4555 Burley Drive, Suite A              )
          Pocatello, Idaho  83202                 )
                                                  )
TERI MANNING, an individual,           )
          5450 Shoshone                           )
          P.O. Box 1524                           )
          Jackson, Wyoming  83001                 )
                                                  )
          Applicant Defendant and Cross-Claim     )

Plaintiff Intervenors                                    )
——————————————————————————)
                                                         )
THE INTERNATIONAL SNOWMOBILE                             )
        MANUFACTURER'S ASSOCIATION,                      )
        et al.                                           )
                                                         )
        Applicant Defendant and Cross-Claim              )
        Plaintiff Intervenors,                           )
                                                         )
        v.                                               )
                                                         )
KEMPTHORNE, et al.                                       )
                                                         )
        Cross-Claim Defendants.                          )
——————————————————————————)

**Declaration of Jack Welch
on Behalf of The BlueRibbon Coalition, Inc.**

1.      I have personal knowledge of the statements in this affidavit.

2.      I am a resident of Wyoming.

3.      I am the past President of the Intervenor Applicant BlueRibbon Coalition, Inc. ("BRC").
        I am currently a member of BRC and a Special Consultant to BRC.

4.      BRC is an Idaho nonprofit corporation representing over 1,000 businesses and
        organizations with approximately 600,000 members nationwide.

5.      In addition to snowmobiles, BRC members use other motorized and nonmotorized
        means, including off-highway vehicles, horses, mountain bikes, and hiking, to access
        federal lands throughout the United States, including lands in Yellowstone and Grand
        Teton Parks and the John D. Rockefeller, Jr. Memorial Parkway (the "Three Parks")
        potentially affected by this litigation.

6.      BRC has a long-standing interest in the protection of the values and natural resources
        found on these lands, and regularly works with land managers to provide recreation
        opportunities, preserve resources, and promote cooperation between public land visitors.
        BRC also prioritizes educating its members and the general public about responsible

motorized and nonmotorized off-highway recreation. Since BRC members are fundamentally affected by outcomes to National Park Service planning and rulemaking processes, BRC is also regularly involved in, and deeply concerned with maintaining the integrity and legal validity of, such administrative processes.

7.     I and many other BRC members have long enjoyed snowmobile access to the Three Parks and intend to visit the Three Parks this season to enjoy snowmobile access to their unique experience and attractions. Any change in the regulatory scheme which will restrict or eliminate snowmobile access will force us to cancel these plans and will prevent our recreational and aesthetic enjoyment of the Three Parks.

8.     I and many other BRC members have, in the past, enjoyed snowmobiling in the Three Parks without a commercial guide, and would like to ride in the Three Parks without a guide in the future. Commercial guides are expensive and unnecessary for me and many BRC members who have ridden in the Three Parks for many years. The NPS's requirement, included in the 2007 Rule that is the subject of this litigation, that snowmobilers entering the Parks be accompanied by a commercial guide imposes additional difficulty and expense on me and other BRC members desiring to snowmobile in the Parks, thus impairing our ability to ride snowmobiles in and diminishing our enjoyment of the Parks.

9.     BRC members include both individuals and organizations that have commercial and economic interests closely tied to snowmobile-oriented recreation in the Three Parks. Such interests include tourism-based businesses and employment. Like most businesses, these businesses face sizable fixed overhead and debt service obligations which do not stop when the snow falls. Snowmobile access has facilitated the development of these businesses by providing some form of winter season revenue. Prior to the popularity of snowmobiling in the Three Parks there was insufficient winter revenue to justify meaningful year-round tourism operations.

10.     A ban on or reduction in recreational snowmobiling in the Three Parks will have drastic consequences for the above-described commercial operations. These adverse effects will spread throughout gateway communities like West Yellowstone. A reduction, or elimination, of snowmobile-oriented tourism businesses will result in the immediate loss of jobs for affected employees. In addition, the local government will be severely affected, since upwards of ninety percent (90%) of West Yellowstone's annual revenue

comes in the form of local resort taxes.  A snowmobile ban or reduction will cause occupancy rates, and associated revenue, to plummet.  Such a decrease in revenue might adversely affect local governmental services.

11.   BRC attempts to maintain a cooperative relationship with all land management agencies, including state and federal offices.  However, there have been many occasions when state or federal agency decisions have not reflected BRC goals or input.  Moreover, BRC has a unique perspective and typically presents different issues, arguments, and evidence than that presented by government legal counsel.  Thus, BRC's legal interests in this action are not identical with, and in some conceivable evolution of this action, might be contrary to, the Department of the Interior's interests, and we anticipate a need to present different information and legal arguments than might be presented by the Department of the Interior.

12.   BRC was a party in two related cases before this Court, Fund for Animals v. Norton, 294 F.Supp.2d 92 (D.D.C. 2003) (involving a challenge to the 2003 winter use regulations), and Fund for Animals v. Norton, No. 1:04-cv-1913 (Sullivan, J.), 512 F. Supp. 2d 49 (D.D.C. 2007) (Feb. 24, 2005 minute order granted BRC's motion to intervene) (involving a challenge to the National Park Service's 2004 Finding of No Significant Impact concerning winter use in Yellowstone).  In addition, BRC was the petitioner in a case before the United States District Court for the District of Wyoming, International Snowmobile Mfrs. Ass'n. v. Norton, 304 F.Supp.2d 1278, 1293 (D. Wyo. 2004), concerning the 2001 winter use regulations, and was a party to the Settlement Agreement initially entered in that case.

*Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.*

Executed

2/9/08

Date

Jack Welch

~~President~~, BlueRibbon Coalition

Past-President
and Member

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
GREATER YELLOWSTONE COALITION, et al.  )
                                              )
        Plaintiffs,                           )
                                              )
        v.                                    )          Case No. 1:07-cv-02111 (EGS)
                                              )
KEMPTHORNE, et al.                            )
                                              )
        Defendants,                           )
                                              )
        and                                   )          DECLARATION OF CHRISTINE
                                              )          JOURDAIN ON BEHALF OF THE
THE INTERNATIONAL SNOWMOBILE           )          AMERICAN COUNCIL OF
        MANUFACTURER'S ASSOCIATION,    )          SNOWMOBILE ASSOCIATIONS
        1640 Haslett Road, Suite 170          )
        Haslett, Michigan  48840              )
                                              )
THE AMERICAN COUNCIL OF SNOWMOBILE )              **EXHIBIT B**
        ASSOCIATIONS,                         )
        271 Woodland Pass, Suite 216          )
        East Lansing, Michigan  48823         )
                                              )
THE BLUERIBBON COALITION,              )
        4555 Burley Drive, Suite A            )
        Pocatello, Idaho  83202               )
                                              )
TERI MANNING, an individual,           )
        5450 Shoshone                         )
        P.O. Box 1524                         )
        Jackson, Wyoming  83001               )
                                              )
        Applicant Defendant and Cross-Claim   )
        Plaintiff Intervenors                 )
_____ )
                                              )
THE INTERNATIONAL SNOWMOBILE           )
        MANUFACTURER'S ASSOCIATION,    )
        et al.                                )
                                              )
        Applicant Defendant and Cross-Claim   )
        Plaintiff Intervenors,                )
                                              )

v.                                              )
                                                )
KEMPTHORNE, et al.                              )
                                                )
        Cross-Claim Defendants.                 )
_____ )

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| GREATER YELLOWSTONE COALITION, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-02111 (EGS) |
| KEMPTHORNE, et al. | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | DECLARATION OF CHRISTINE JOURDAIN ON BEHALF OF THE AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS |
| THE INTERNATIONAL SNOWMOBILE MANUFACTURER'S ASSOCIATION, 1640 Haslett Road, Suite 170 Haslett, Michigan  48840 | ) ) ) ) ) | |
| THE AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS, 271 Woodland Pass, Suite 216 East Lansing, Michigan  48823 | ) ) ) ) ) | |
| THE BLUERIBBON COALITION, 4555 Burley Drive, Suite A Pocatello, Idaho  83202 | ) ) ) ) | |
| TERI MANNING, an individual, 5450 Shoshone P.O. Box 1524 Jackson, Wyoming  83001 | ) ) ) ) ) | |



Applicant Defendant and Cross-Claim )
Plaintiff Intervenors )
_____ )
)
THE INTERNATIONAL SNOWMOBILE )
    MANUFACTURER'S ASSOCIATION, )
    et al. )
)
Applicant Defendant and Cross-Claim )
Plaintiff Intervenors, )
)
    v. )
)
KEMPTHORNE, et al. )
)
Cross-Claim Defendants. )
_____ )

**Declaration of Christine Jourdain**
**On Behalf of the American Council of Snowmobile Associations**

1.    I have personal knowledge of the statements in this declaration.

2.    I am a resident of Michigan.

3.    I am the Executive Director of the Applicant Intervenor, American Council of Snowmobile Associations ("ACSA").

4.    ACSA is a national organization formed to unite the snowmobile community and provide a strong voice on national issues for the millions of individuals across the United States who enjoy recreational snowmobiling.

5.    ACSA's purposes include: promoting snowmobile use and policies that will benefit its recreational snowmobiler members; public education regarding responsible snowmobile use and safety; fostering the growth of the sport of snowmobiling; preserving snowmobile use for future generations; and maintaining snowmobile access to public lands including those at issue in this case.

6.     ACSA members regularly use Yellowstone National Park, Grand Teton National Park, and the John D. Rockefeller, Jr., Memorial Parkway (the "Parks") for snowmobiling.

7.     Any ban on, restriction on, or reduction in the use of snowmobiles on public lands, including the lands at issue and affected by this lawsuit, adversely impacts ACSA and its members.  Decreased opportunities to use snowmobiles on public lands, specifically including the lands at issue in this case, negatively impacts ACSA members' ability to enjoy the sport they love in some of the greatest natural landscapes in the United States.

8.     ACSA members historically have ridden snowmobiles in the Parks without commercial guides when permitted to do so, and many ACSA members would like to ride in the Parks in the future without commercial guides.  Many ACSA members know the Parks well and do not need commercial guides.  Furthermore, commercial guides are expensive and the requirement that riders be accompanied by commercial guides makes it more difficult for many ACSA members to ride in the Parks.  However, National Park Service Policies including the December 2007 rule at issue here require ACSA members to be accompanied by commercial guides when they ride in the Parks, a requirement that is both unnecessary and expensive and diminishes my and other ACSA members' enjoyment of the Parks.

9.     If Plaintiffs are successful in this action, ACSA members will suffer further reduced opportunities to participate in snowmobiling in the Parks.

10.    It is important that ACSA be granted permission by the Court to participate in this litigation in order to protect its and its members' interests in access to public lands, specifically including Yellowstone National Park, Grand Teton National Park, and the John D. Rockefeller, Jr., Memorial Parkway, for recreational snowmobiling.

*Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct.*

Executed:

2-5-08
_____
Date

_____
Christine Jourdain
Executive Director, American Council of
Snowmobile Associations

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

GREATER YELLOWSTONE COALITION, et al.  )
                              )

     Plaintiffs,                  )
                              )

     v.                        )     Case No. 1:07-cv-02111 (EGS)
                              )

KEMPTHORNE, et al.             )
KEMPTHORNE, et al.             )
                              )

     Defendants,               )
                              )

     and                   )     DECLARATION OF ED KLIM
                              )     ON BEHALF OF THE

THE INTERNATIONAL SNOWMOBILE    )     INTERNATIONAL
     MANUFACTURER'S ASSOCIATION,   )     SNOWMOBILE
     1640 Haslett Road, Suite 170      )     MANUFACTURER'S
     Haslett, Michigan  48840         )     ASSOCIATION
                              )

THE AMERICAN COUNCIL OF SNOWMOBILE )
     ASSOCIATIONS,            )
     271 Woodland Pass, Suite 216      )     **EXHIBIT C**
     East Lansing, Michigan  48823     )
                                )

THE BLUERIBBON COALITION,      )
     4555 Burley Drive, Suite A       )
     Pocatello, Idaho  83202         )
                                )

TERI MANNING, an individual,     )
     5450 Shoshone              )
     P.O. Box 1524             )
     Jackson, Wyoming  83001       )
                                )

     Applicant Defendant and Cross-Claim  )
     Plaintiff Intervenors         )
_____)
                              )

THE INTERNATIONAL SNOWMOBILE    )
     MANUFACTURER'S ASSOCIATION,   )
     et al.                    )
                              )

     Applicant Defendant and Cross-Claim  )
     Plaintiff Intervenors,        )

|  | ) |
| v. | ) |
|  | ) |
| KEMPTHORNE, et al. | ) |
|  | ) |
| Cross-Claim Defendants. | ) |
|  | ) |

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
GREATER YELLOWSTONE COALITION, et al.  )
                                            )
        Plaintiffs,                         )
                                            )
        v.                                  )        Case No. 1:07-cv-02111 (EGS)
                                            )
KEMPTHORNE, et al.                          )
                                            )
        Defendants,                         )
                                            )
        and                                 )        DECLARATION OF ED KLIM
                                            )        ON BEHALF OF THE
THE INTERNATIONAL SNOWMOBILE                )        INTERNATIONAL
        MANUFACTURER'S ASSOCIATION,         )        SNOWMOBILE
        1640 Haslett Road, Suite 170        )        MANUFACTURER'S
        Haslett, Michigan  48840            )        ASSOCIATION
                                            )
THE AMERICAN COUNCIL OF SNOWMOBILE )
        ASSOCIATIONS,                       )
        271 Woodland Pass, Suite 216        )
        East Lansing, Michigan  48823       )
                                            )
THE BLUERIBBON COALITION,                   )
        4555 Burley Drive, Suite A          )
        Pocatello, Idaho  83202             )
                                            )
TERI MANNING, an individual,                )
        5450 Shoshone                       )
        P.O. Box 1524                        )
        Jackson, Wyoming  83001             )
                                            )



Applicant Defendant and Cross-Claim )
Plaintiff Intervenors )
_____)
)
THE INTERNATIONAL SNOWMOBILE )
    MANUFACTURER'S ASSOCIATION, )
    et al. )
)
Applicant Defendant and Cross-Claim )
Plaintiff Intervenors, )
)
v. )
)
KEMPTHORNE, et al. )
)
Cross-Claim Defendants. )
_____)

**Declaration of Ed Klim**
**On Behalf of the International Snowmobile Manufacturers Association**

1.    I have personal knowledge of the statements in this declaration.

2.    I am a resident of Michigan.

3.    I am the Executive Director of the Applicant Intervenor, International Snowmobile Manufacturers Association, Inc. ("ISMA"), headquartered in Haslett, Michigan.

4.    ISMA is an organization of snowmobile manufacturers established in 1995 as an outgrowth of a larger organization created in the 1960s.

5.    ISMA's purposes include: promoting snowmobile use and policies that will benefit our snowmobile manufacturer members; preparing and disseminating information to our members; expanding our membership; and fostering the growth of the sport of snowmobiling.

6.      ISMA members manufacture snowmobiles and snowmobile parts and rely on sales of their products to users of the National Park System, including the Yellowstone and Grand Teton National Parks and John P. Rockefeller, Jr. Memorial Parkway area (collectively, the "Parks").

7.      Any ban on, restriction on, or reduction in the use of snowmobiles on public lands, including the lands at issue and affected by this lawsuit, adversely affects sales of snowmobiles and parts.  First, potential buyers may not purchase a snowmobile due to decreased opportunities to enjoy the vehicle.  Second, decreased opportunities to use snowmobiles extend the life of currently owned snowmobiles, reducing sales of new snowmobiles and parts.  Generally, snowmobile rental fleets in the Yellowstone and Grand Teton National Parks and John P. Rockefeller Jr. Memorial Parkway area update their fleets approximately every two to three years.

8.      The 2007 Rule that is the subject of this litigation also requires all recreational snowmobilers entering Yellowstone National Park to be accompanied by a commercial guide.  This requirement also will adversely impact sales of snowmobiles and parts.  Many riders will be discouraged from riding due to the expense of hiring a commercial guide or because their enjoyment of the Parks will be diminished by the requirement that they ride with a commercial guide.  Fewer riders will result in reduced need to replace snowmobiles or snowmobile parts, and fewer purchases of new snowmobiles.

9.      ISMA was a party in two related cases before this Court, one involving a challenge to the NPS's 2003 winter use plan, see Fund for Animals v. Norton, No. CIV.A. 02-2367 (EGS), 294 F. Supp. 2d 92 (D.D.C. 2003), and another involving a challenge to the

National Park Service's 2004 Finding of No Significant Impact concerning winter use in Yellowstone.  See Fund for Animals v. Norton, No. 1:04-cv-1913 (Sullivan, J.) (Feb. 24, 2005 minute order granting ISMA's motion to intervene).  In addition, ISMA was the petitioner in a case before the U.S. District Court for the District of Wyoming concerning the 2001 winter use regulations, see International Snowmobile Mfrs. Ass'n v. Norton, 304 F.Supp.2d 1278, 1293 (D. Wyo. 2004), and is a party to the Settlement Agreement initially entered in that case.

*Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.*

Executed:

5 FEB 2008
_____
Date

Ed Klim
Executive Director, International
Snowmobile Manufacturers Association

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                      )
GREATER YELLOWSTONE COALITION, et al.  )
                                                      )
    Plaintiffs,                          )
                                                      )
    v.                                  )          Case No. 1:07-cv-02111 (EGS)
                                                      )
KEMPTHORNE, et al.                         )
                                                      )
    Defendants,                         )
                                                      )
    and                                )          DECLARATION OF TERI
                                                      )          MANNING
THE INTERNATIONAL SNOWMOBILE        )
    MANUFACTURER'S ASSOCIATION,  )
    1640 Haslett Road, Suite 170          )
    Haslett, Michigan  48840             )          **EXHIBIT D**
                                                      )
THE AMERICAN COUNCIL OF SNOWMOBILE )
    ASSOCIATIONS,                       )
    271 Woodland Pass, Suite 216         )
    East Lansing, Michigan  48823        )
                                                      )
THE BLUERIBBON COALITION,              )
    4555 Burley Drive, Suite A             )
    Pocatello, Idaho  83202               )
                                                      )
TERI MANNING, an individual,             )
    5450 Shoshone                       )
    P.O. Box 1524                       )
    Jackson, Wyoming  83001            )
                                                      )
    Applicant Defendant and Cross-Claim  )
    Plaintiff Intervenors                  )
_____)
                                                      )
THE INTERNATIONAL SNOWMOBILE        )
    MANUFACTURER'S ASSOCIATION,  )
    et al.                                )
                                                      )
    Applicant Defendant and Cross-Claim  )
    Plaintiff Intervenors,                 )
                                                      )

v.                                    )
                                      )
KEMPTHORNE, et al.                    )
                                      )
        Cross-Claim Defendants.       )
_____)

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| )<br>GREATER YELLOWSTONE COALITION, et al.  )<br>)<br>    Plaintiffs,                )<br>)<br>    v.                     )<br>)<br>KEMPTHORNE, et al.         )<br>)<br>    Defendants,        )<br>)<br>    and             )<br>) | Case No. 1:07-cv-02111 (EGS)<br><br><br><br>DECLARATION OF TERI<br>MANNING |

THE INTERNATIONAL SNOWMOBILE                    )
    MANUFACTURER'S ASSOCIATION,          )
    1640 Haslett Road, Suite 170                        )
    Haslett, Michigan  48840                              )
                            )

THE AMERICAN COUNCIL OF SNOWMOBILE )
    ASSOCIATIONS,                                             )
    271 Woodland Pass, Suite 216                      )
    East Lansing, Michigan  48823                      )
                            )

THE BLUERIBBON COALITION,                           )
    4555 Burley Drive, Suite A                            )
    Pocatello, Idaho  83202                                 )
                            )

TERI MANNING, an individual,                          )
    5450 Shoshone                                             )
    P.O. Box 1524                                              )
    Jackson, Wyoming  83001                           )
                            )

| | |
|---|---|
| Applicant Defendant and Cross-Claim | ) |
| Plaintiff Intervenors | ) |
| ————————————————————— | ) |
| | ) |
| THE INTERNATIONAL SNOWMOBILE | ) |
| MANUFACTURER'S ASSOCIATION, | ) |
| et al. | ) |
| | ) |
| Applicant Defendant and Cross-Claim | ) |
| Plaintiff Intervenors, | ) |
| | ) |
| v. | ) |
| | ) |
| KEMPTHORNE, et al. | ) |
| | ) |
| Cross-Claim Defendants. | ) |
| ————————————————————— | ) |

### <u>Declaration of Teri Manning</u>

1.     I have personal knowledge of the statements in this declaration.

2.     I am a resident of Wyoming.

3.     I am the past-President of Applicant Intervenor American Council of Snowmobile Associations ("ACSA").

4.     I am the past-President of the Wyoming State Snowmobile Association ("WSSA").

5.     I make this affidavit in support of my application to intervene in this action as a private individual.

6.     I live in Jackson, Wyoming, approximately 3 miles from Grand Teton National Park and 50 miles from the southern boundary of Yellowstone National Park.

7.     I have used Yellowstone National Park and Grand Teton National Park for snowmobiling in the past and intend to do so again in the future.  I have ridden snowmobiles in

Yellowstone and Grand Teton National Parks for decades, and intend to do so in the future.

8.     Personally and in past leadership positions with national and Wyoming-focused snowmobiling organizations, I have dedicated a great deal of time and effort to snowmobiling and promoting the sport of snowmobiling, including preserving snowmobile access to public lands specifically including the lands at issue in this litigation.

9.     Any further ban on, restriction on, or reduction in the use of snowmobiles on public lands, including the lands at issue and affected by this lawsuit, adversely impacts me and other snowmobilers like me.  Decreased opportunities to use snowmobiles on public lands, specifically including the lands at issue in this case, negatively impacts my ability to enjoy the sport I love in some of the greatest natural landscapes in the United States, and makes it more difficult for me to use snowmobiles in the Parks.

10.    I have ridden snowmobiles in the Parks for many years without a commercial guide when allowed to do so, and would like to ride in the Parks in the future without a commercial guide.  I know the Parks well and do not need a commercial guide.  Furthermore, a commercial guide is a significant additional expense that makes it more difficult for me to ride in the Parks.  However, National Park Service Policies including the December 2007 rule at issue here require me to be accompanied by a commercial guide when I ride in the Parks, a requirement that is both unnecessary and expensive.  This requirement makes it more difficult and more expensive for me to enjoy riding snowmobiles in the Parks.

11.   It is important that I be granted permission by the Court to participate in this litigation in order to protect my interest in access to public lands, specifically including Yellowstone National Park, Grand Teton National Park, and the John D. Rockefeller, Jr., Memorial Highway, for recreational snowmobiling.

*Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct.*

Executed:

__2/6/2008__
Date

*Teri Manning*
Teri Manning

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff
Intervenors International Snowmobile Manufacturer's Association,
American Council of Snowmobile Associations,
BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| GREATER YELLOWSTONE COALITION, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-02111 (EGS) |
| KEMPTHORNE, et al. | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | [LODGED] ANSWER AND CROSS-CLAIMS |
| THE INTERNATIONAL SNOWMOBILE MANUFACTURER'S ASSOCIATION, 1640 Haslett Road, Suite 170 Haslett, Michigan  48840 | ) ) ) ) ) | |
| THE AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS, 271 Woodland Pass, Suite 216 East Lansing, Michigan  48823 | ) ) ) ) ) | |
| THE BLUERIBBON COALITION, 4555 Burley Drive, Suite A Pocatello, Idaho  83202 | ) ) ) ) | |
| TERI MANNING, an individual, 5450 Shoshone P.O. Box 1524 Jackson, Wyoming  83001 | ) ) ) ) ) | |

Applicant Defendant and Cross-Claim                    )
Plaintiff Intervenors                                            )
——————————————————————)
                                                                        )
THE INTERNATIONAL SNOWMOBILE               )
    MANUFACTURER'S ASSOCIATION,          )
    et al.                                                      )
                                                                        )
Applicant Defendant and Cross-Claim                    )
Plaintiff Intervenors,                                           )
                                                                        )
    v.                                                         )
                                                                        )
KEMPTHORNE, et al.                                         )
                                                                        )
Cross-Claim Defendants.                              )
——————————————————————)

       Defendant and Cross-Claim Plaintiff Intervenors the International Snowmobile Manufacturer's Association ("ISMA"), American Council of Snowmobile Associations ("ACSA"), BlueRibbon Coalition, Inc. ("BRC"), and individual Teri Manning (collectively, the "Intervenors"), by and through counsel hereby answer Plaintiffs' First Amended and Supplemented Complaint for Declaratory and Injunctive Relief (the "Amended Complaint"), filed January 11, 2008, and submit their cross-claims against Federal Defendants.  Unless specifically stated otherwise, the numbered paragraphs in Intervenors' Answer correspond to the numbered paragraphs in Plaintiffs' Amended Complaint.  To the extent an allegation by Plaintiffs is unanswered, Intervenors deny each such allegation.

## INTERVENORS' ANSWER

       1.    Plaintiffs' ¶ 1 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is required Intervenors deny the allegations in ¶ 1.

2.    Intervenors have insufficient knowledge to either admit or deny the allegations in ¶ 2, and, on information and belief, admit them.

3.    Intervenors have insufficient knowledge to either admit or deny the allegations in ¶ 3, and, on information and belief, admit them.

4.    Intervenors have insufficient knowledge to either admit or deny the allegations in ¶ 4, and, on information and belief, admit them.

5.    Intervenors have insufficient knowledge to either admit or deny the allegations in ¶ 5, and, on information and belief, admit them.

6.    Intervenors have insufficient knowledge to either admit or deny the allegations in ¶ 6, and, on information and belief, admit them.

7.    Intervenors have insufficient knowledge to either admit or deny the allegations in the first two sentences of ¶ 7, and, on information and belief, admit them.  The third and fourth sentences of ¶ 7 are denied.  The fifth sentence of ¶ 7 constitutes a legal conclusion to which no response is required.

8.    Admit.

9.    Admit.

10.    Admit.

## Jurisdiction and Venue

11.    Plaintiffs' ¶ 11 constitute Plaintiffs' characterization of their claims and/or legal conclusions, to which no response is required.  In addition, ¶ 11 characterizes statutes that speak for themselves.

12.    The allegations in ¶ 12 constitute legal conclusions, to which no response is required.

13.     The allegations in ¶ 13 constitute legal conclusions, to which no response is required.

### The Legal Framework

14.     The allegations in ¶ 14 constitute legal conclusions, to which no response is required.  Furthermore, ¶ 14 contains characterizations of statutes, regulations, executive orders, and agency policies that speak for themselves.

15.     Admit the first sentence of ¶ 15.  The second that third sentences of ¶ 15 contain quotations and/or characterizations of statutes that speak for themselves.

16.     The allegations in the first sentence of ¶ 16 constitute statements of opinion to which no response is required.  The remaining allegations in ¶ 16 characterize and/or quote documents that speak for themselves.

17.     Admit that the National Park Service Organic Act of 1916 established the National Park System.  All other allegations in ¶ 17 constitute characterizations or quotations of statutes that speak for themselves.

18.     The allegations in ¶ 18 characterize and/or quote documents that speak for themselves.

19.     The allegations in ¶ 19 characterize and/or quote documents that speak for themselves.

20.     The allegations in ¶ 20 characterize and/or quote documents that speak for themselves.

21.     The allegations in ¶ 21 characterize and/or quote documents that speak for themselves.

**Factual Background**

22.      The first sentence of ¶ 22 constitutes a legal conclusion to which no response is required.  The second sentence is admitted in part and denied in part.  Admit that the Park Service has allowed snowmobiles into Yellowstone National Park for years, and deny the remaining allegations in the second sentence of ¶ 22.

***Snowmobile Use in Yellowstone***

23.      Admit the first sentence of ¶ 23.  The second sentence of ¶ 23 is admitted to the extent that snowmobile usage increased during the 1970's and 1980's, and denied in all other respects. Admit the third sentence of ¶ 23.

24.      Admit.

25.      The allegations in ¶ 25 characterize and/or quote documents that speak for themselves.

***The 2001 Decision to Phase Out Snowmobile Use***

26.      Intervenors have insufficient knowledge to either admit or deny the first sentence of ¶ 26 and, on information and belief, admit it.  The remainder of ¶ 26 characterizes documents that speak for themselves.

27.      The allegations in ¶ 27 characterize and/or quote documents that speak for themselves.

28.      The allegations in ¶ 28 characterize documents that speak for themselves.

29.      The allegations in ¶ 29 characterize and/or quote documents that speak for themselves.

30.      The allegations in ¶ 30 characterize documents that speak for themselves.

31.    Admit that GYC and others challenged the 2003 Record of Decision.    The remaining allegations in ¶ 31 characterize documents, including pleadings filed in the course of prior judicial proceedings, that speak for themselves.

32.    The allegations in ¶ 32 characterize and/or quote documents that speak for themselves.

33.    The allegations in ¶ 33 characterize documents that speak for themselves.

*Litigation Over the Original 2001 Snowmobile Phase-Out*

34.    The allegations in ¶ 34 characterize documents that speak for themselves.

35.    The allegations in ¶ 35 characterize documents that speak for themselves.

36.    The allegations in ¶ 36 characterize documents that speak for themselves.

37.    Admit that the 2004 Rule authorized up to 720 snowmobiles per day in Yellowstone National Park.  Intervenors have insufficient knowledge to either admit or deny the remaining allegations in the first sentence of ¶ 37.  Deny the second sentence of ¶ 37.  Admit the third sentence of ¶ 37.

38.    Admit that the Park Service released a draft environmental impact statement for a new winter use plan in March 2007.  The remaining allegations in ¶ 38 characterize documents that speak for themselves.

39.    Intervenors have insufficient knowledge to either admit or deny the allegations in the first sentence of ¶ 39.  The remaining allegations in ¶ 39 characterize documents that speak for themselves.

40.    The allegations in ¶ 40 characterize and/or quote documents that speak for themselves.

41.     The allegations in ¶ 41 characterize and/or quote documents that speak for themselves.

### First Cause of Action:  Violation of the National Park Service Organic Act

42.     No response required.

43.     The allegations in ¶ 43 characterize and/or quote documents that speak for themselves, or constitute legal conclusions to which no response is required.

44.     The third sentence of ¶ 44 characterizes documents that speak for themselves. Deny the remaining allegations in ¶ 44, except for the last sentence.  Admit that the rule is arbitrary, capricious, an abuse of discretion, and contrary to law, for the reasons set forth in Intervenors' cross-claims, below.  Deny the remaining allegations in the last sentence of ¶ 44.

### Second Cause of Action:  Violation of Governing Executive Orders

45.     No response required.

46.     The allegations in ¶ 46 characterize and/or quote documents that speak for themselves.

47.     Admit that the rule is arbitrary, capricious, an abuse of discretion, and contrary to law, for the reasons set forth in Intervenors' cross-claims, below.  Deny the remaining allegations in ¶ 47.

### Third Cause of Action:  Violation of Park Service Regulations

48.     No response required.

49.     The allegations in ¶ 49 characterize and/or quote documents that speak for themselves.

50.     Admit that the rule is arbitrary, capricious, an abuse of discretion, and contrary to law, for the reasons set forth in Intervenors' cross-claims, below.   Deny the remaining allegations in ¶ 50.

### Fourth Cause of Action:  Violation of NEPA

51.     No response required.

52.     The allegations in ¶ 52 characterize and/or quote documents that speak for themselves.

53.     Deny.

54.     Admit that the rule is arbitrary, capricious, an abuse of discretion, and contrary to law, for the reasons set forth in Intervenors' cross-claims, below.   Deny the remaining allegations in ¶ 54.

### Fifth Cause of Action:  Violation of NEPA

55.     No response required.

56.     Deny the first sentence of ¶ 56.  The remaining allegations in ¶ 56 characterize and/or quote documents that speak for themselves.

57.     The allegations in ¶ 57 characterize and/or quote documents that speak for themselves.  To the extent a further response is required, Intervenors deny the allegations in ¶ 57.

58.     Deny.

59.     Admit that the rule is arbitrary, capricious, an abuse of discretion, and contrary to law, for the reasons set forth in Intervenors' cross-claims, below.   Deny the remaining allegations in ¶ 59.

### Sixth Cause of Action:  Violation of NEPA

60.     No response required.

61.     The allegations in ¶ 61 characterize and/or quote documents that speak for themselves.  To the extent a further response is required, Intervenors deny the allegations in ¶ 61.

62.     Deny the first two sentences of ¶ 62.  Admit that the rule is arbitrary, capricious, an abuse of discretion, and contrary to law, for the reasons set forth in Intervenors' cross-claims, below.  Deny the remaining allegations in the last sentence of ¶ 62.

### Seventh Cause of Action:  Violation of NEPA

63.     No response required.

64.     The allegations in ¶ 64 characterize and/or quote documents that speak for themselves.  To the extent a further response is required, Intervenors deny the allegations in ¶ 64.

65.     The allegations in ¶ 65 characterize and/or quote documents that speak for themselves.  To the extent a further response is required, Intervenors deny the allegations in ¶ 65.

66.     Admit that the rule is arbitrary, capricious, an abuse of discretion, and contrary to law, for the reasons set forth in Intervenors' cross-claims, below.  Deny the remaining allegations in ¶ 66.

### Eighth Cause of Action:  Unexplained Departure

67.     No response required.

68.     The allegations in ¶ 68 characterize documents that speak for themselves.

### Request for Relief

No response to Plaintiffs' Request for Relief is required.  To the extent a response is required, Intervenors deny that Plaintiffs are entitled to the relief they seek.

### INTERVENORS' CROSS-CLAIMS

1.     Defendant and Cross-Claim Plaintiff-Intervenors ISMA, ACSA, BRC, and Teri Manning ("Intervenors") bring their cross-claims under the Administrative Procedure Act,

codified at 5 U.S.C. §§ 551 <u>et</u> <u>seq.</u> (the "APA"); the Yellowstone National Park Act, codified at

16 U.S.C. §§ 21 <u>et</u> <u>seq.</u> (the "YNPA"), and the National Park Service Organic Act, codified at 16

U.S.C. §§ 1 <u>et</u> <u>seq</u> (the "Organic Act").

### Parties, Jurisdiction, and Venue

2.    Intervenor International Snowmobile Manufacturers' Association ("ISMA"),

based in Michigan, is an organization of snowmobile manufacturers dedicated to, *inter alia*,

promoting snowmobiling and snowmobile-friendly policies, preparing and disseminating

information regarding snowmobiling opportunities, and fostering growth in the sport of

snowmobiling.  ISMA members manufacture many of the snowmobiles and snowmobile parts

that are used throughout the National Park System, including in Yellowstone National Park,

Grand Teton National Park, and the Rockefeller Parkway.  ISMA previously challenged, in the

U.S. District Court for the District of Wyoming, the NPS's promulgation of a 2001 winter use

plan prohibiting all regulated recreational snowmobile use on portions of the Yellowstone

National Park road system.  <u>See</u> <u>Int'l Snowmobile Mfrs. Ass'n. v. Norton</u>, 304 F. Supp. 2d 1278

(D. Wyo. 2004).  In addition, ISMA was previously a Defendant Intervenor with the NPS in a

case in this Court brought to challenge the NPS's 2004 Temporary Winter Use Plan regulating

and allowing snowmobile use on portions of the Yellowstone National Park road system.  <u>See</u>

<u>Fund for Animals v. Norton</u>, Civ. No. 04-1913 (EGS), 512 F. Supp. 2d 49 (D.D.C. 2007).

3.    The American Council of Snowmobile Associations ("ACSA"), based in

Michigan, is an organization made up of snowmobilers and snowmobiling-related businesses and

associations dedicated to providing a strong national voice to promote the interests of the

snowmobiling community and the millions of snowmobilers throughout the United States.

Among other things, ACSA promotes snowmobile access to public lands across the United

States, including the Parks. ACSA members have ridden snowmobiles recreationally in Yellowstone National Park for many years and intend to ride there in the future. In addition, ACSA members have, in the past, ridden snowmobiles in Yellowstone National Park without guides and would ride there again without guides if allowed to do so.

4. The BlueRibbon Coalition, Inc. ("BRC"), based in Idaho, is an Idaho non-profit organization representing over 1,000 businesses and organizations with approximately 600,000 members nationwide. BRC is dedicated to promoting public access to federal lands like those at issue in this case for both motorized and non-motorized use, including for snowmobiling in the Parks. BRC has participated in past litigation and rulemaking proceedings in connection with its mission of preserving motorized and non-motorized access to public lands for recreational purposes. BRC previously challenged, in the U.S. District Court for the District of Wyoming, the NPS's promulgation of a 2001 winter use plan prohibiting all regulated recreational snowmobile use on portions of the Yellowstone National Park road system. See Int'l Snowmobile Mfrs. Ass'n. v. Norton, 304 F. Supp. 2d 1278 (D. Wyo. 2004). In addition, BRC was previously a Defendant Intervenor with the NPS in a case in this Court brought to challenge the NPS's 2004 Temporary Winter Use Plan regulating and allowing snowmobile use on portions of the Yellowstone National Park road system. See Fund for Animals v. Norton, Civ. No. 04-1913 (EGS), 512 F. Supp. 2d 49 (D.D.C. 2007). BRC members have ridden snowmobiles recreationally in Yellowstone National Park for many years and intend to ride there in the future. In addition, BRC members have, in the past, ridden snowmobiles in Yellowstone National Park without guides and would ride there again without guides if allowed to do so.

5. Teri Manning is an individual residing in Wyoming who has, for many years, enjoyed snowmobiling in the Parks. Ms. Manning is a past president of the Wyoming State

Snowmobile Association and ACSA, and in those capacities has dedicated significant amounts of time and effort to protecting and promoting the interests of snowmobilers, including access to public lands specifically including the Parks at issue here. Ms. Manning has ridden snowmobiles recreationally in Yellowstone National Park for many years and intends to ride there in the future. In addition, Ms. Manning has, in the past, ridden snowmobiles in Yellowstone National Park without a guide and would ride there again without guides if allowed to do so.

6.     This Court has jurisdiction over Petitioner Intervenors' claims under 5 U.S.C. §§ 701-706, 28 U.S.C. § 1331, and Local Civil Rule 83.7.2.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(e). Respondents are all federal agencies or federal officers acting in their official capacities and located in this district. In addition, a substantial part of the events and omissions giving rise to the 2007 Final Rule occurred in this judicial district.

<u>**Challenged Action**</u>

8.     During the winter use seasons of 2004-2005, 2005-2006, and 2006-2007, recreational snowmobile use in the Parks was governed by an NPS Interim Rule that provided, *inter alia*, for 720 snowmobiles per day to enter Yellowstone National Park. <u>See</u> 69 Fed. Reg. 65348, 65349 (Nov. 10, 2004).

9.     The NPS Interim Rule also required all snowmobiles entering Yellowstone National Park for recreational purposes to be accompanied by a commercial guide. <u>See id.</u>

10.     On May 16, 2007, the NPS published a proposed permanent rule regarding winter use for the Parks. <u>See</u> 72 Fed. Reg. 27500 <u>et</u> <u>seq.</u> (May 16, 2007). The proposed rule, like the Interim Rule previously in place, included a limit of 720 snowmobiles per day in Yellowstone National Park (aside from at Cave Falls, which, as an isolated area where snowmobile use is

incidental to snowmobile use outside the Park, has its own independent daily limit). Id. at 27505. The proposed rule, like the Interim Rule, also required all recreational snowmobiles entering Yellowstone National Park to be accompanied by a commercial guide. Id.

11.     The NPS published its 2007 Final Rule on December 13, 2007. See 72 Fed. Reg. 70781 et seq. The 2007 Final Rule includes a new, previously never proposed limit of 540 snowmobiles per day in Yellowstone National Park (aside from Cave Falls). See id. at 70798. The 2007 Final Rule also includes a requirement that all recreational snowmobiles entering Yellowstone National Park be accompanied by a commercial guide.

12.     Yellowstone National Park has never been subject to a limit as low as the 2007 Final Rule's 540 snowmobile-per-day limit. While the NPS sought to impose a complete ban on recreational snowmobiling in Yellowstone National Park in 2001, that ban was never implemented and was enjoined by the U.S. District Court for the District of Wyoming. See International Snowmobile Mfrs. Ass'n. v. Norton, 304 F. Supp. 2d 1278 (D. Wyo. 2004).

13.     Consequently, the impacts of a 540 snowmobile-per-day limit, as opposed to a 720 snowmobile-per-day limit, are largely conjectural and not based on an actual comparison of real world impacts of the two alternative limits.

14.     Cars, buses, trucks, and other motorized vehicles are permitted to drive into and through Yellowstone National Park without a commercial guide.

15.     The 2007 Final Rule was preceded by a draft environmental impact statement on April 2, 2007, see 72 Fed. Reg. 15720 et seq. (Apr. 2, 2007), and a final environmental impact statement ("FEIS") issued on September 25, 2007. See 72 Fed. Reg. 54456 (Sept. 25, 2007).

16.     The NPS's limit in its 2007 Final Rule of 540 snowmobiles per day is arbitrary and capricious and contrary to law and exceeds the NPS's statutory authorization.

**Petitioner Intervenors' Claims**

17.     The NPS's promulgation of the 2007 Final Rule is final agency action subject to review in this Court.  See 5 U.S.C. § 704; Int'l Snowmobile, 304 F. Supp. 2d at 1290 (2001 winter use rules constituted "final agency action" for purposes of judicial review).

18.     The 2007 Final Rule's 540 snowmobile-per-day limit on entries into Yellowstone National Park and requirement that all snowmobiles entering the Park to be accompanied by a commercial violate the Organic Act and the YNPA.  Furthermore, the reduced daily limit and commercial guide requirements are not supported by the record and contradict the NPS's own published management policies.  As such, the reduced daily snowmobile limit and commercial guide requirement are arbitrary and capricious and not in accordance with law, in violation of the APA.

**Count I:  The 2007 Final Rule Violates the Organic Act**

19.     Intervenors expressly incorporate all allegations previously set forth herein.

20.     The Organic Act provides:

> The [National Park Service] shall promote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified, except such as are under the jurisdiction of the Secretary of the Army, as provided by law, by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and ***to provide for the enjoyment of the same*** in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1 (emphasis added).  One of the "fundamental purposes" of the NPS is to provide for the enjoyment of National Parks including Yellowstone National Park.

21.     The 2007 Final Rule's imposition of a daily 540 snowmobile limit and a commercial guide requirement are significant obstacles to many park visitors' enjoyment of

Yellowstone National Park.

22.     As such, the 2007 Final Rule violates the Organic Act's statutory mandate that NPS provide for the enjoyment of National Parks.

### Count II:  The 2007 Final Rule Violates the YNPA

23.     Intervenors expressly incorporate all allegations previously set forth herein.

24.     The YNPA provides that Yellowstone National Park is:

> [R]eserved and withdrawn from settlement, occupancy, or sale under the laws of the United States, and dedicated and set apart as a public park or pleasuring ground for the benefit and enjoyment of the people[.]

16 U.S.C. § 21.

25.     The NPS's reduction in snowmobile entries into Yellowstone National Park and its commercial guides requirement impair Yellowstone National Park's statutorily-mandated purpose as a "public park or pleasuring ground for the benefit and enjoyment of the people[.]"

26.     As such, the 2007 Final Rule violates the YNPA.

### Count III:  The 2007 Final Rule Violates the APA Because It Is "Not in Accordance With Law" and Exceeds the NPS's Statutory Authority

27.     Intervenors expressly incorporate all allegations previously set forth herein.

28.     The APA requires a reviewing court to hold unlawful any final agency action that is, *inter alia*, "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  5 U.S.C. § 706(2).

29.     Because the 2007 Final Rule's daily snowmobile limits and commercial guide requirements exceed the NPS's authority under and violate the terms of the Organic Act and the YNPA, as discussed above, the APA requires that the reviewing court hold those provisions unlawful.

### Count IV:  The 2007 Final Rule's Reduced Daily Snowmobile Entry Limit Into

**Yellowstone National Park Violates the APA Because It Is Arbitrary, Capricious, Not in Accordance With Law, Lacks a Reasoned Analysis by the NPS, and <u>Violates the NPS's Own Published Management Policies</u>**

30.     Intervenors expressly incorporate all allegations previously set forth herein.

31.     The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, [or] an abuse of discretion[.]"  5 U.S.C. § 706(2)(A).

32.     There is no observed evidence in the record that reducing the daily snowmobile entry limit from 720 to 540 snowmobiles will have any significant impact on natural soundscapes or other natural conditions, as no limit below 720 snowmobiles per day has ever been implemented at Yellowstone National Park.

33.     The NPS's reduction in the daily snowmobile limit, therefore, is based entirely on conjecture and untested predictions about conditions under 540 snowmobile daily limit.  As such, the reduction from 720 to 540 snowmobiles per day is unsupported by the record and is arbitrary and capricious, in violation of the APA.

34.     The reduced daily snowmobile limit also contradicts published NPS Management Policies.  The NPS Management Policies published by the NPS in 2006 direct NPS decision makers, in crafting new policies, to:

> [E]mploy a tone that leaves no room for misunderstanding the Park Service's commitment to ***the public's appropriate use and enjoyment***, including education and interpretation, of park resources, while preventing unacceptable impacts[.]

National Park Service, <u>Management Policies:  The Guide to Managing the National Park System</u> at p. 4 (Aug. 31, 2006) (emphasis added).

35.     The 2007 Final Rule violates the Park Service's statement of policy.  It impairs the "appropriate use and enjoyment" of Yellowstone National Park by a portion of the public

(snowmobile users).  Furthermore, that impairment is based entirely on untested conjecture about the impacts 540 snowmobile per day limit that has never been implemented in reality and that is significantly lower than the lowest daily limit previously implemented.

36.    The reduced daily snowmobile limit is arbitrary and capricious in violation of the APA.

**Count V:  The 2007 Final Rule's Commercial Guide Requirement Violates the APA
Because It Is Arbitrary, Capricious, Not in Accordance With Law,
Lacks a Reasoned Analysis by the NPS, and Violates the NPS's
Own Published Management Policies**

37.    Intervenors expressly incorporate all allegations previously set forth herein.

38.    The 2007 Final Rule's commercial guide requirement is not supported by the record.  It rests on conjecture and assumptions about the behavior of snowmobilers in Yellowstone National Park with and without commercial guides.  It also makes numerous assumptions about commercial guide capabilities and behavior that are not supported by any evidence in the record.

39.    The commercial guide requirement also contradicts the NPS's published management policies because it impairs the "appropriate use and enjoyment" of Yellowstone National park by a portion of the public (snowmobile users).  That impairment is based entirely on untested conjecture about the impact of the commercial guide requirement on park resources, with no actual evidence that it will have any significant positive impact on Park resources.

**Prayer For Relief**

40.    Accordingly, Defendant and Cross Claim Plaintiff Intervenors ask the Court to:

    a.    Set aside that portion of the 2007 Final Rule imposing a 540-snowmobile limit on daily snowmobile entries into Yellowstone National Park; and

    b.    Set aside that portion of the 2007 Final Rule requiring all snowmobiles entering

Yellowstone National Park to be accompanied by a commercial guide; and

c.   Order that Federal Defendants impose a daily snowmobile limit that is not arbitrary and capricious, that is supported by the record, and that complies with federal law; and

d.   Order that Federal Defendants impose only those conditions on entry into Yellowstone National Park that are consistent with federal law; and

e.   Order that the previous 720-snowmobile limit remain in effect until such time as Federal Respondents promulgate a limit that complies in all respects with their legal obligations; and

f.   Grant Intervenors such further and additional relief as the Court may deem proper.

Submitted this 20th day of March, 2008.

BIRCH HORTON BITTNER & CHEROT, P.C.

Respectfully submitted,

/s/ William P. Horn
William P. Horn (D.C. Bar No. 375666)
David E. Lampp (D.C. Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027
whorn@dc.bhb.com; dlampp@dc.bhb.com

*Attorneys for Defendant and Cross-Claim Plaintiff Intervenors International Snowmobile Manufacturers Association, American Council of Snowmobile Associations, BlueRibbon Coalition, Inc., and Teri Manning*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of March, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means.  I further certify that I caused correct copies of the foregoing to be served by placing the same in the U.S. first class mail, postage prepaid, addressed as follows:

The Hon. Michael B. Mukasey
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530

Barry A. Weiner
Guillermo A. Montero
Luther L. Hajek
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044

Jeffrey A. Taylor, Esq.
United States Attorney for the District of Columbia
555 Fourth Street, NW
Washington, DC  20530

The Honorable Dirk Kempthorne
Secretary
United States Department of the Interior
1849 C Street, NW
Washington, DC  20240

The Honorable Mary Bomar
Director, National Park Service
1849 C Street NW
Washington, DC  20240

David S. Baron
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC  20036

Douglas L. Honnold
Sean M. Helle
Earthjustice
209 South Willson Ave.
Bozeman, MT  51715

  /s/ David E. Lampp
David E. Lampp

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ) | |
| GREATER YELLOWSTONE COALITION, et al. ) | |
| ) | |
|    Plaintiffs, ) | |
| ) | |
|    v. ) | Case No. 1:07-cv-02111 (EGS) |
| ) | |
| KEMPTHORNE, et al. ) | |
| ) | |
|    Defendants, ) | |
| ) | |
|    and ) | AMERICAN COUNCIL OF |
| ) | SNOWMOBILE |
| THE INTERNATIONAL SNOWMOBILE ) | ASSOCIATIONS'S DISCLOSURE |
|    MANUFACTURER'S ASSOCIATION, ) | STATEMENT REQUIRED BY |
|    1640 Haslett Road, Suite 170 ) | LCvR 7.1 |
|    Haslett, Michigan 48840 ) | |
| ) | |
| THE AMERICAN COUNCIL OF SNOWMOBILE ) | |
|    ASSOCIATIONS, ) | |
|    271 Woodland Pass, Suite 216 ) | |
|    East Lansing, Michigan 48823 ) | |
| ) | |
| THE BLUERIBBON COALITION, ) | |
|    4555 Burley Drive, Suite A ) | |
|    Pocatello, Idaho 83202 ) | |
| ) | |
| TERI MANNING, an individual, ) | |
|    5450 Shoshone ) | |
|    P.O. Box 1524 ) | |
|    Jackson, Wyoming 83001 ) | |
| ) | |
|    Applicant Defendant and Cross-Claim ) | |

<table>
<tr><td>Plaintiff Intervenors</td><td>)</td></tr>
<tr><td>_____</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>THE INTERNATIONAL SNOWMOBILE<br>     MANUFACTURER'S ASSOCIATION,<br>    et al.</td><td>)<br>)<br>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Applicant Defendant and Cross-Claim<br>    Plaintiff Intervenors,</td><td>)<br>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>KEMPTHORNE, et al.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Cross-Claim Defendants.</td><td>)</td></tr>
<tr><td>_____</td><td>)</td></tr>
</table>

Case:  <u>Greater Yellowstone Coalition, et al. v. Kempthorne, et al.</u>, no. 1:07-cv-02111 (EGS) in the U.S. District Court for the District of the District of Columbia.

Certificate required by LCvR 7.1 of the Local Rules of the United States District Court for the District of Columbia:

I, the undersigned, counsel for the American Council of Snowmobile Associations, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of the American Council of Snowmobile Associations which have any outstanding securities in the hands of the public.

NONE

These representations are made in order that judges of this court may determine the need for recusal.

DATED this 20th day of March, 2008.                BIRCH HORTON BITTNER & CHEROT

                                                      _/s/ William P. Horn_____
                                                     William P. Horn (DC Bar No. 375666)
                                                     David E. Lampp (DC Bar No. 480215)
                                                     Birch Horton Bittner & Cherot, PC
                                                     1155 Connecticut Ave. NW, Suite 1200
                                                     Washington, DC  20036
                                                     Telephone:  (202) 659-5800
                                                     Facsimile:  (202) 659-1027
                                                     whorn@dc.bhb.com
                                                     dlampp@dc.bhb.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 20th day of March, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means. I further certify that I caused correct copies of the foregoing to be served by placing the same in the U.S. first class mail, postage prepaid, addressed as follows:

The Hon. Michael B. Mukasey
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Barry A. Weiner
Guillermo A. Montero
Luther L. Hajek
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044

Jeffrey A. Taylor, Esq.
United States Attorney for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530

The Honorable Dirk Kempthorne
Secretary
United States Department of the Interior
1849 C Street, NW
Washington, DC 20240

The Honorable Mary Bomar
Director, National Park Service
1849 C Street NW
Washington, DC 20240

David S. Baron
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC 20036

Douglas L. Honnold
Sean M. Helle
Earthjustice
209 South Willson Ave.
Bozeman, MT 51715

   /s/ David E. Lampp
David E. Lampp

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ) | |
| GREATER YELLOWSTONE COALITION, et al.  ) | |
| ) | |
| Plaintiffs,                                    ) | |
| ) | |
| v.                                               ) | Case No. 1:07-cv-02111 (EGS) |
| ) | |
| KEMPTHORNE, et al.                       ) | |
| ) | |
| Defendants,                                  ) | |
| ) | |
| and                                             ) | BLUERIBBON COALTION, |
| ) | INC'S DISCLOSURE I |
| THE INTERNATIONAL SNOWMOBILE    ) | STATEMENT REQUIRED BY |
| MANUFACTURER'S ASSOCIATION,    ) | LCvR 7.1 |
| 1640 Haslett Road, Suite 170              ) | |
| Haslett, Michigan  48840                   ) | |
| ) | |
| THE AMERICAN COUNCIL OF SNOWMOBILE ) | |
| ASSOCIATIONS,                            ) | |
| 271 Woodland Pass, Suite 216            ) | |
| East Lansing, Michigan  48823            ) | |
| ) | |
| THE BLUERIBBON COALITION,          ) | |
| 4555 Burley Drive, Suite A                 ) | |
| Pocatello, Idaho  83202                      ) | |
| ) | |
| TERI MANNING, an individual,           ) | |
| 5450 Shoshone                                ) | |
| P.O. Box 1524                                 ) | |
| Jackson, Wyoming  83001                  ) | |

```
                                              )
        Applicant Defendant and Cross-Claim   )
        Plaintiff Intervenors                 )
——————————————————————————————)
                                              )
THE INTERNATIONAL SNOWMOBILE                  )
        MANUFACTURER'S ASSOCIATION,           )
        et al.                                )
                                              )
        Applicant Defendant and Cross-Claim   )
        Plaintiff Intervenors,                )
                                              )
        v.                                    )
                                              )
KEMPTHORNE, et al.                            )
                                              )
        Cross-Claim Defendants.               )
——————————————————————————————)
```

Case:  Greater Yellowstone Coalition, et al. v. Kempthorne, et al., no. 1:07-cv-02111 (EGS) in

the U.S. District Court for the District of the District of Columbia.

Certificate required by LCvR 7.1 of the Local Rules of the United States District Court for the

District of Columbia:

I, the undersigned, counsel for the BlueRibbon Coalition, Inc., certify that to the best of my

knowledge and belief, the following are parent companies, subsidiaries or affiliates of the

BlueRibbon Coalition, Inc. which have any outstanding securities in the hands of the public.

NONE

These representations are made in order that judges of this court may determine the need for

recusal.

DATED this 20th day of March, 2008.

BIRCH HORTON BITTNER & CHEROT

_ /s/ William P. Horn_____
William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027
whorn@dc.bhb.com
dlampp@dc.bhb.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of March, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means. I further certify that I caused correct copies of the foregoing to be served by placing the same in the U.S. first class mail, postage prepaid, addressed as follows:

The Hon. Michael B. Mukasey
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530

Barry A. Weiner
Guillermo A. Montero
Luther L. Hajek
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044

Jeffrey A. Taylor, Esq.
United States Attorney for the District of Columbia
555 Fourth Street, NW
Washington, DC  20530

The Honorable Dirk Kempthorne
Secretary
United States Department of the Interior
1849 C Street, NW
Washington, DC  20240

The Honorable Mary Bomar
Director, National Park Service
1849 C Street NW
Washington, DC  20240

David S. Baron
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC  20036

Douglas L. Honnold
Sean M. Helle
Earthjustice
209 South Willson Ave.
Bozeman, MT  51715

   /s/ David E. Lampp                   
David E. Lampp

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant and Cross-Claim Plaintiff*
*Intervenors International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| GREATER YELLOWSTONE COALITION, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:07-cv-02111 (EGS) |
| ) | |
| KEMPTHORNE, et al. ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | INTERNATIONAL |
| ) | SNOWMOBILE |
| THE INTERNATIONAL SNOWMOBILE ) | MANUFACTURER'S |
| MANUFACTURER'S ASSOCIATION, ) | ASSOCIATION'S DISCLOSURE |
| 1640 Haslett Road, Suite 170 ) | STATEMENT REQUIRED |
| Haslett, Michigan  48840 ) | BY LCvR 7.1 |
| ) | |
| THE AMERICAN COUNCIL OF SNOWMOBILE ) | |
| ASSOCIATIONS, ) | |
| 271 Woodland Pass, Suite 216 ) | |
| East Lansing, Michigan  48823 ) | |
| ) | |
| THE BLUERIBBON COALITION, ) | |
| 4555 Burley Drive, Suite A ) | |
| Pocatello, Idaho  83202 ) | |
| ) | |
| TERI MANNING, an individual, ) | |
| 5450 Shoshone ) | |
| P.O. Box 1524 ) | |
| Jackson, Wyoming  83001 ) | |
| ) | |

Applicant Defendant and Cross-Claim )
Plaintiff Intervenors )
_____ )
)
THE INTERNATIONAL SNOWMOBILE )
     MANUFACTURER'S ASSOCIATION, )
     et al. )
)
Applicant Defendant and Cross-Claim )
Plaintiff Intervenors, )
)
     v. )
)
KEMPTHORNE, et al. )
)
Cross-Claim Defendants. )
_____ )

Case:  Greater Yellowstone Coalition, et al. v. Kempthorne, et al., no. 1:07-cv-02111 (EGS) in the U.S. District Court for the District of the District of Columbia.

Certificate required by LCvR 7.1 of the Local Rules of the United States District Court for the District of Columbia:

I, the undersigned, counsel for the International Snowmobile Manufacturer's Association, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of the International Snowmobile Manufacturer's Association which have any outstanding securities in the hands of the public.

NONE

These representations are made in order that judges of this court may determine the need for recusal.

DATED this 20th day of March, 2008.

BIRCH HORTON BITTNER & CHEROT

  /s/ William P. Horn

William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027
whorn@dc.bhb.com
dlampp@dc.bhb.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of March, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means. I further certify that I caused correct copies of the foregoing to be served by placing the same in the U.S. first class mail, postage prepaid, addressed as follows:

The Hon. Michael B. Mukasey
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530

Barry A. Weiner
Guillermo A. Montero
Luther L. Hajek
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044

Jeffrey A. Taylor, Esq.
United States Attorney for the District of Columbia
555 Fourth Street, NW
Washington, DC  20530

The Honorable Dirk Kempthorne
Secretary
United States Department of the Interior
1849 C Street, NW
Washington, DC  20240

The Honorable Mary Bomar
Director, National Park Service
1849 C Street NW
Washington, DC  20240

David S. Baron
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC  20036

Douglas L. Honnold
Sean M. Helle
Earthjustice
209 South Willson Ave.
Bozeman, MT  51715

  /s/ David E. Lampp_____
David E. Lampp