**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ————————————————— ) | |
| GREATER YELLOWSTONE COALITION, ) | |
| *et al.*,                                  ) | |
| ) | |
| Plaintiffs,     ) | |
| ) Civil Action No. 07-2111(EGS) | |
| v.          ) | |
| ) | |
| DIRK KEMPTHORNE, *et al.*,      ) | |
| ) | |
| Defendants.    ) | |
| ————————————————— ) | |
| | |
| ————————————————— ) | |
| NATIONAL PARKS CONSERVATION ) | |
| ASSOCIATION,                        ) | |
| ) | |
| Plaintiff,      ) | |
| ) Civil Action No. 07-2112(EGS) | |
| v.          ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| INTERIOR; NATIONAL PARK        ) | |
| SERVICE,                               ) | |
| ) | |
| Defendants.    ) | |
| ————————————————— ) | |

<u>**MEMORANDUM OPINION**</u>

Litigation concerning the use of snowmobiles in Yellowstone and other national parks has been ongoing in this Court in various forms since 1997.  The instant cases represent the latest in a series of challenges to the regulations promulgated by the

National Park Service ("NPS") concerning winter activities in the National Parks.  The regulations currently at issue propose new restrictions on recreational snowmobiling in Yellowstone and Grand Teton National Parks and the John D. Rockefeller Jr. Memorial Parkway (collectively "the parks").  Specifically, the new Winter Use Plan promulgated by Defendants allows 540 recreational snowmobiles to enter Yellowstone National Park every day.  Plaintiffs allege that this number is so high as to render the plan arbitrary and capricious in violation of the Administrative Procedure Act ("APA") and procedurally flawed in violation of the National Environmental Protection Act ("NEPA").

Pending before the Court is Defendants' Motion to Transfer this case to the District of Wyoming where similar litigation has also been filed.  Upon consideration of the Motion, the responses and replies thereto, the applicable law and the entire record of this long-running litigation, the Court **DENIES** Defendants' Motion.  Also pending before the Court is the International Snowmobile Manufacturers Association's Motion to Intervene as Defendants and to assert cross-claims.  For the reasons stated herein, the Motion to Intervene is **GRANTED IN PART AND DENIED IN PART.**

I.   **BACKGROUND**

A.   **History of Snowmobiles Litigation**

This Court's involvement in the ongoing series of cases regarding Yellowstone's winter management began in 1997 and has continued nearly without pause to the present day.  *See Fund for Animals v. Norton,* 323 F. Supp. 2d 7 (D.D.C. 2004)("*FFA II*"); *Fund for Animals v. Norton*, 294 F. Supp. 2d 92 (D.D.C. 2003)("*FFA I*"); *Fund for Animals v. Babbitt*, 97-cv-1126 (EGS) (filed May 20, 1997).  Over the years, environmental and recreation groups have challenged the Park Service's restrictions on the use of snowmobiles in the parks, with the more recent controversies growing out of a year 2000 Record of Decision which found that the use of snowmobiles at present levels so harmed the integrity of the parks' resources and values that it violated the NPS Organic Act. *See Record of Decision*, Winter Use Plans for the Yellowstone and Grand Teton National Parks and John D. Rockefeller Jr., Memorial Parkway ("2000 ROD"), 65 Fed. Reg. 80,908, 80,916 (Dec. 22, 2000).  In light of this finding, in 2001, NPS published a Final Rule calling for the eventual phase-out of personal snowmobiles in the parks, and instead recommended continued winter access through the use of a snowcoach mass transit system. *FFA I*, 294 F. Supp. 2d at 100.  The "phase-out rule," promulgated by the Clinton administration, was published the day after President George W. Bush took office, and was immediately stayed pending a review of the Rule by the new

administration.  *Id.*  In response to litigation brought by
snowmobiling interest groups, NPS prepared a Supplemental EIS
("SEIS") in 2003.  The SEIS proposed a dramatic change of course.
In place of the planned phase-out, NPS set a new limit of 950
snowmobiles per day in Yellowstone.  *Id.* at 101.  Following two
lawsuits in this Court and one in the District of Wyoming, NPS
put into effect a "Temporary Winter Use Plan" which allowed a
daily limit of 720 snowmobiles, subject to "best available
technology" standards and some commercial guide requirements.
This temporary plan was to be in effect for three winter seasons,
from 2004 through 2007, and then replaced with a long-term winter
use plan in 2007/2008.  It is that long-term plan which is the
subject of the instant case.

### B.   The Instant Suit

On September 24, 2007, NPS published its Winter Use Plans
Final Environmental Impact Statement ("FEIS").  The complete plan
was published in a November 20, 2007 Record of Decision ("2007
ROD").  The 2007 ROD claims to address "this Court's various
concerns regarding the winter use 2003 Supplemental EIS" and
allows 540 recreational snowmobiles per day, subject to "best
available technology standards," commercial guiding, and a
requirement that all snowmobilers travel in groups of eleven or
less.  2007 ROD, p. 3, 8, 13-15.  On November 20 and 21, 2007,

4

two lawsuits were filed in this Court challenging the FEIS and
ROD.  The Greater Yellowstone Coalition Plaintiffs were the first
to file suit and consist of conservation organizations that "take
an active interest in maintaining the integrity of the National
Park System."  This group includes the Sierra Club, the Winter
Wildlands Alliance, the Wilderness Society and the Natural
Resources Defense Counsel (collectively "GYC").  GYC Compl. ¶ 7.
The second suit was brought by plaintiff National Parks
Conservation Association ("NPCA"), the largest national
organization in the United States dedicated to the protection and
enhancement of the National Park System.  NPCA Compl. ¶ 8.  Both
suits allege that the FEIS and 2007 ROD in this case failed to
comply with the National Environmental Protection Act ("NEPA")
and the Administrative Procedure Act ("APA").  On December 18,
2007, NCPA amended its complaint to include a challenge to the
2007 Final Rule, which was published on December 13, 2007.  In
addition to NEPA and the APA, NPCA contends that the 2007 Final
Rule violates the National Park Service Organic Act, and
governing Executive Orders and NPS Regulations.  The GYC
plaintiffs likewise amended their compliant on January 11, 2008
to also challenge the Final Rule bringing similar claims.  The
cases were consolidated by Order of this Court on March 19,

2008.[1]

Defendants are the National Park Service, Dirk Kempthorne, in his official capacity as the Secretary of the Interior, Mary Bomar in her official capacity as Director of the National Park Service and Mike Snyder in his official capacity as Director of the Intermountain Region of the U.S. National Park Service (collectively "NPS").

### C.   The Wyoming Litigation

On December 13, 2007, the State of Wyoming filed a petition for review of agency action challenging the FEIS, 2007 ROD, and 2007 Final Rule, alleging that those actions violate NEPA, the APA, the Organic Act, the Yellowstone National Park Act, and the United States Constitution insofar as they (1) impose daily limits on snowmobile access to Yellowstone National Park ("Yellowstone"); (2) impose a commercial guide requirement; and (3) impose a new management scheme for Sylvan Pass.  Defs.' Mot. at 9.  On January 2, 2008, the Board of County Commissioners of

---

[1] The Court's consolidation Order indicated that any later filed Motion to Transfer would be resolved separately for each Plaintiff.  The Court has considered the separate responses of each Plaintiff along with the Defendants' separately filed replies.  However, as explained herein, the Court finds that Defendants have failed to meet their burden for reasons that apply equally to each Plaintiff.  Accordingly, in the interest of judicial economy, and because Defendants' burden is the same in both cases, the Court resolves this motion in a single opinion.

the County of Park filed a nearly identical petition.  *Id.*  The two Wyoming Cases were consolidated by Order dated February 19, 2008.  *Id.*  On February 22, 2008, the International Snowmobile Manufacturers Association, the American Council of Snowmobile Associations, the Blue Ribbon Coalition, and Terri Manning (collectively "ISMA") filed a motion to intervene as plaintiffs in the consolidated Wyoming Cases, challenging the 2007 Final Rule's reduced limit of 540 snowmobiles per day in Yellowstone and the commercial guide requirement.  *Id.*  ISMA's motion was granted the same day.

## II.  DISCUSSION

On March 25, 2008, Defendants filed a Motion to Transfer this case to the District of Wyoming.  Defendants contend that transfer is warranted because of the risk of inconsistent verdicts between the two Federal Courts presently entertaining challenges to the 2007 Final Rule and supporting documentation. Defendants also argue that the "localized nature" of this controversy and the public interest in judicial economy warrant transfer.  Plaintiffs counter that substantial deference is due to their choice of forum in this Court, that this Court's history with this litigation counsels in favor of denying transfer, that this issue is of national significance, and that the principle of comity requires any similar cases to be transferred to this Court

7

because the first challenge relating to the 2007 Final Rule was filed here.

Under 28 U.S.C. § 1404(a), district courts in their discretion may transfer a case to any other district where it might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a). Under this statute, the moving party "bears the burden" of establishing that transfer is appropriate.  *Flynn v. Veazey Constr. Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004).  *See Sec. and Exch. Comm. v. Savoy Ind., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (district court's ruling denying motion to transfer "was effectively a ruling that [appellant] had failed to shoulder his burden").

A party dissatisfied with the plaintiffs' chosen forum has the burden of demonstrating the appropriateness of transfer.  *FFA II*, 352 F. Supp. 2d at 1-2.  If venue is proper, as it is here, transfer elsewhere under Section 1404(a) must be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute.  *Savoy Ind.*, 587 F.2d at 1154 (internal quotations omitted).  Ultimately, in all but those cases in which the plaintiffs' chosen forum has "'no meaningful ties to the controversy and no particular interest in the parties or subject

8

matter[,]'" courts "must afford substantial deference to the
plaintiffs' choice of forum." *Greater Yellowstone Coalition v.
Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (quoting *Islamic
Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C.
1979)); see also *FFA II*, 352 F. Supp. 2d at 2; *Wilderness Soc'y
v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000) ("Absent
specific facts that would cause a district court to question
plaintiffs' choice of forum, plaintiffs' choice is afforded
substantial deference."). In exercising their broad discretion,
courts are to "balance case-specific factors which include the
private interests of the parties and public interests such as
efficiency and fairness." *Greater Yellowstone Coalition*, 180 F.
Supp. 2d at 127.

### A.    Private Interest Factors

The private-interest factors include: (1) the plaintiffs'
choice of forum, unless the balance of convenience is strongly in
favor of the defendants; (2) the defendants' choice of forum; (3)
whether the claim arose elsewhere; (4) the convenience of the
parties; (5) the convenience of the witnesses of the plaintiff
and defendant, but only to the extent that the witnesses may
actually be unavailable for trial in one of the fora; and (6) the
ease of access to sources of proof. *See Greater Yellowstone
Coalition*, 180 F. Supp. 2d at 127 (citing *Trout Unlimited v. U.S.*

*Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)(citations omitted)).

Because this is an action for review of an administrative record and live testimony is unlikely, the Court need not consider the fifth and sixth factors. *Id.* Of the remaining four factors, only the Defendants' choice of forum arguably weighs in favor of transfer. Defendants primarily argue that their choice of forum will avoid the risk of inconsistent verdicts between this Court and the District of Wyoming. However, that result is far from certain. Defendants have informed the Court that they have filed a contingent Motion to Transfer the Wyoming litigation to this Court that will be ripe for adjudication on April 25, 2008. Defendants apparently fear that their Motion will be denied and they will again face the risk of inconsistent judgments should both cases ultimately be decided on the merits in their respective venues. Defendants ask this Court to override Plaintiffs' choice of forum based on mere speculation about the likelihood of an adverse ruling on their Motion to Transfer in the Wyoming Court. This Court will not engage in such speculation about the decisions of another Federal Court. Furthermore, it is speculative at this early stage whether the risk of inconsistent judgments is a legitimate concern. While this case certainly has a history of conflicting orders, the

challenges presented in the instant suits are not identical, nor are they guaranteed to produce conflicting outcomes.

The remaining private interest factors counsel in favor of denying transfer.  As to the convenience of the parties, Plaintiff NPCA has its headquarters in Washington, DC and the litigation is being directed by its General Counsel, who is located in the District of Columbia.  The NCPA's outside counsel is also located in the District of Columbia.  Of the GYC Plaintiffs, the Wilderness Society, the Sierra Club, and the Natural Resources Defense Counsel each have offices here.  The Winter Wildlands Alliance is based in Boise, Idaho, and the Greater Yellowstone Coalition is headquartered in Bozeman, Montana, with two staff members based in a Wyoming Field Office and six staff members working out of Idaho Falls, Idaho.  Both the Federal Defendants' headquarters and their counsel in the Department of Justice are also based in Washington, DC. Furthermore, proposed intervenors' counsel, the firm of Birch, Horton, Bittner and Cherot, an Alaska-based firm, has its only other office in the District of Columbia.

Defendants argue that the Wyoming District Court is not inconvenient because several of the plaintiffs have field offices in or around Yellowstone.  Defendant contends that "none of the plaintiffs could claim prejudice as a result of being made to

litigate in Wyoming" because "NCPA has field offices in both
Jackson Hole, Wyoming, and Livingston, Montana... The Wilderness
Society also has a field office ... in Bozeman, Montana... and
the Greater Yellowstone Coalition is headquartered in Bozeman."
Def.'s Mot. at 17.  This argument fails to appreciate the
magnitude of the Western landscape.  The Wyoming District Court
in Cheyenne where the related litigation is pending is
approximately 600 miles from both Bozeman and Livingston and 432
miles from Jackson Hole.  Defendants cannot reasonably maintain
that the presence of field offices an average of 500 miles from
the Court is more convenient than a main office approximately 2.5
miles away, as is the case for both the Wilderness Society and
the NCPA Plaintiffs.  Accordingly, the Court finds that the
convenience of the parties clearly weighs in favor of denying
transfer.  Defendants have failed to articulate any prejudice
that will befall them by being forced to litigate in this
District, the home to both Defendants themselves and their
counsel.

Finally, the Court also finds that the claim did not "arise
elsewhere," but rather arose in this District, where the Rule was
drafted and published.  NPCA Plaintiffs aver significant
involvement on the part of high-level Executive Branch officials,
up to and including those in the White House.  NPCA Opp'n at 6.

12

The Final Rule was signed by the Assistant Secretary of the Interior for Fish and Wildlife and Parks, who is based in Washington, D.C.  The voluminous Administrative Record is located in the District of Columbia.  While it is undoubtedly the case that NPS officials located in and around Yellowstone provided input into the formulation of the FEIS, the 2007 ROD, and the 2007 Final Rule, this controversy stems from the formulation of national policy on an issue of national significance.  *See Wilderness Soc'y*, 104 F. Supp. 2d at 14.

## B.    Public Interest Factors

The Court has determined that the private interest factors weigh heavily in favor of denying transfer.  However, the Court must also analyze whether the public-interest factors also support denying Defendants' motion.  The Court determines that they do.

The public-interest considerations include: (1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Greater Yellowstone Coalition*, 180 F. Supp. 2d. At 128.

First, as detailed above, this Court has a long history with

13

the facts and law surrounding this case and the prior litigation involving winter use at Yellowstone National Park.  This Court has rejected previous attempts to transfer this litigation out of this district and finds that Defendants have failed to produce any new or compelling arguments to persuade the Court that in spite of this Court's experience with this litigation, transfer is appropriate now.

As for the pendency of related actions, the Court finds it is in the interest of justice that the principle of comity is upheld.  Plaintiffs' complaints in this Court were filed on November 20 and 21, 2007.  The Wyoming plaintiffs filed their complaint on December 13, 2007.  Under the so-called "first-to-file rule," the first court in which jurisdiction attaches has priority to consider the case.  This rule has been invoked by both the Tenth and D.C. Circuits.  *See Washington Metro. Area Transit Auth. v. Ragarose*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("For more than three decades the rule in this circuit has been that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first …."); *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) ("The rule is that the first federal district court which obtains jurisdiction of parties and issues

14

should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."). Defendants do not object to the consolidation of these related actions before a single Court and accordingly have filed a contingent motion in the District Court in Wyoming to transfer the related litigation to this forum. This Court has no reason to believe that the District of Wyoming would not observe the same principles of comity upheld in both the D.C. and Tenth Circuits and grant Defendants' motion to transfer the related litigation here. Although Defendants' concerns about the prospect of conflicting orders are understandable, it appears to this Court that such a conflict is unlikely.

The Court rejects Defendants' argument that Plaintiffs' initial complaints challenging the 2007 ROD and FEIS were somehow deficient such that they should not be accorded first-filing status. Defendants chose not to challenge the sufficiency of Plaintiffs' complaints and therefore the Court considers any such argument waived. Furthermore, as a general matter, Defendants are incorrect as a matter of law. *See Ouachita Watch League v. Jacobs,* 463 F.3d 1163, 1173 (11th Cir. 2006)("It is well settled that a final EIS or the record of decision issued thereon constitute final agency action.") (citing *SW Williamson County*

*Cmty Ass'n, Inc. v. Slater,* 173 F.3d 1033, 1036 (6th Cir. 1999)).
Defendants chose not to argue that the ROD or FEIS in this case
might constitute an exception to this rule and therefore the
Court will not entertain that argument now.

As for the respective calendars of each court, Defendants
have not argued that the District of Wyoming has a less congested
docket than this Court.  Accordingly, this factor does not weigh
in favor of transfer.

Finally, Defendants argue that this case is a "localized
controversy" the effects of which will be "more acutely felt in
the state of Wyoming" and therefore it should be decided "within
their view."  Defs.' Mot. at 15.  While the Court does not
discount the importance of these issues to the people of Wyoming,
the Court finds, as it has done previously, that the management
of Yellowstone National Park and more broadly, the interpretation
of various federal mandates governing the NPS, present questions
of national significance.  *See Greater Yellowstone Coalition*, 180
F. Supp. 2d at 128-29 (noting the "national significance" of a
case involving the interpretation of federal statutes, and no
state laws, affecting the management of the Yellowstone buffalo);
*Wilderness Soc'y*, 104 F. Supp. 2d at 13 (concluding that the
Department of the Interior's decision to begin oil and gas
leasing on Alaska's National Petroleum Reserve was a "national
policy decision" concerning a "national resource" not "an

16

isolated, local environmental issue"). Yellowstone National Park
is truly a national icon. The first case challenging the winter
use plan for the parks was litigated in this District precisely
because conserving the scenery, natural objects and wildlife of
that park is a matter of great national importance. *See FFA I,*
294 F. Supp. 2d at 102-03. With respect to both the draft EIS
and the proposed rule, comments came from every state in the
United States and 14 foreign countries. GYC Opp'n at 17. More
than 70% of visitors to Yellowstone and Grand Teton National
Parks are from states other than Wyoming, Montana and Idaho, the
States in which those Parks are located in whole or in part. *See*
NPCA Opp'n, Ex. A.

This case is distinguishable from *Trout Unlimited v. U.S.
Dep't of Agric.,* 944 F. Supp. 13 (D.D.C. 1996). In that case,
this Court granted defendant's motion to transfer because no
plaintiff resided in the District of Columbia, the challenged
decision was inherently local and the controversy involved the
potential interpretation of Colorado law. *Id.* at 18-19.
*Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1 (D.D.C. 1996) is
also unavailing. There, all the plaintiffs and their witnesses
lived in the Virgin Islands and the environmental laws in
question were alleged to have been violated there. Moreover, the
prior action in the District Court for the Virgin Islands
"created three volumes of trial transcript, and a large volume of

documents and exhibits." *Id.* at 3.  This Court found that "no other court is more familiar with the factual background and legal issues of this case than the District Court for the Virgin Islands, and there is little doubt that transfer of this case will promote significant economy of judicial resources." *Id.* at 4.

As in *Wilderness Society v. Babbitt*, Plaintiffs' ties to the District of Columbia, the involvement of multiple Washington-based officials in the challenged action, and the national scope of the environmental issues at stake defeat Defendants' claim that the connection between Plaintiffs, the controversy and the forum is attenuated.  The management of the National Parks and the interpretation of federal environmental statutes are nationwide concerns.  Accordingly, Plaintiffs' choice of forum is entitled to substantial deference.  *Wilderness Soc'y*, 104 F. Supp. 2d at 14.  Defendants have failed to meet their burden of demonstrating the appropriateness of transfer in this case, and accordingly the Plaintiffs' choice of forum must be respected.

## III. MOTION TO INTERVENE

Also pending before the Court is ISMA's Motion to Intervene as defendants and to assert cross-claims against the Federal Defendants in this case.  Applicant Intervenors are organizations dedicated to the promotion of snowmobiling and the snowmobiling industry and the promotion of snowmobiling as part of responsible

conservation and management policies.  Furthermore, these
organizations' members enjoy snowmobiling in Yellowstone National
Park.[2]  ISMA's Mot. at 3.  Applicant Intervenors contend they
"have significant interests in this litigation that are not
adequately represented by the current parties."  *Id.*

ISMA argues that it is entitled to intervene as a matter of
right under Federal Rule of Civil Procedure 24(a). Alternatively,
ISMA moves the Court for permissive intervention under Rule
24(b).

Rule 24(a) provides:

On timely motion, the court must permit anyone to
intervene who:
(2) claims an interest relating to the property or
transaction that is the subject of the action, and is
so situated that disposing of the action may as a
practical matter impair or impede the movant's ability
to protect its interest, unless existing parties
adequately represent that interest.

Fed. R. Civ. P. 24(a).

As a threshold matter, an applicant for intervention as of
right must show that it has standing under Article III of the
U.S. Constitution to participate in the litigation as a party.
*See Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C. Cir.
1998).  There are three additional prerequisites to intervention
as of right: (1) there must be an "adequate interest"; (2) there

_____

[2] As previously noted, Applicant Intervenors include the
International Snowmobile Manufacturers Association, the American
Council of Snowmobile Associations, the Blue Ribbon Coalition,
and Terri Manning (collectively "ISMA").

must be a "possible impairment of that interest"; and (3) there
must be a "lack of adequate representation of that interest by
existing parties." *Dimond v. District of Columbia*, 792 F.2d 179,
192 (D.C. Cir. 1986).  ISMA's Mot. at 17.

ISMA's Motion to Intervene as a defendant was timely filed
and is unopposed. *See* Def.'s Opp'n at 3, n. 2; *see generally*
GYC's Opp'n, NCPA's Opp'n.  The Court agrees that ISMA has
Article III standing, and has substantial interests in the case
that are subject to impairment that would not be adequately
represented by the parties.  Accordingly, ISMA's motion is
**GRANTED** insofar as ISMA seeks to intervene as a defendant against
Plaintiffs' claims.

However, the Court will not allow ISMA's cross-claims
against the Federal Defendants to proceed in this case at this
time.  ISMA has filed identical claims in the District of Wyoming
litigation against the same defendants.  Under the first-to-file
rule discussed above, this Court must yield to the Wyoming
Court's jurisdiction over ISMA's claims.  Should ISMA decide to
voluntarily withdraw its affirmative claims against the Federal
Defendants in Wyoming, or if that case is ultimately transferred
to this Court, they are free to move the Court to reconsider its
decision.

## IV.    CONCLUSION

For the reasons stated herein, Defendants have failed to

persuade the Court that transfer of this case to the District of Wyoming is in the interests of justice.  Accordingly, it is hereby **ORDERED** that Defendants' Motion to Transfer is **DENIED.**  It is **FURTHER ORDERED** that ISMA's Motion to Intervene is **GRANTED IN PART AND DENIED IN PART.**  ISMA may intervene as a defendant, but may not assert affirmative cross-claims at this time.  An appropriate Order accompanies this Memorandum Opinion.


**Signed:**     **EMMET G. SULLIVAN**
           **UNITED STATES DISTRICT JUDGE**
           **April 24, 2008**