William P. Horn (DC Bar No. 375666)
David E. Lampp (DC Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Defendant Intervenors*
*International Snowmobile Manufacturer's Association,*
*American Council of Snowmobile Associations,*
*BlueRibbon Coalition, Inc., and Teri Manning*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| GREATER YELLOWSTONE COALITION, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-02111 (EGS) |
| | ) | |
| KEMPTHORNE, et al. | ) | Hearing on Motions for Summary |
| | ) | Judgment to be Held on |
| Defendants, | ) | August 27, 2008 |
| | ) | |
| and | ) | |
| | ) | |
| THE INTERNATIONAL SNOWMOBILE | ) | |
| MANUFACTURER'S ASSOCIATION, | ) | |
| et al. | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____

_____

|  |  |  |
|---|---|---|
| NATIONAL PARKS CONSERVATION | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-02112 (EGS) |
| | ) | |
| v. | ) | Hearing on Motions for Summary |
| | ) | Judgment to be Held on |
| | ) | August 27, 2008 |

1

UNITED STATES DEPARTMENT OF          )
    INTERIOR, et al.                            )
                                         )    **DEFENDANT-INTERVENORS'**
    Defendants,                                    )    **REPLY MEMORANDUM IN**
                                         )    **SUPPORT OF FEDERAL**
    and                                                )    **DEFENDANTS' MOTION FOR**
                                         )    **SUMMARY JUDGMENT**
THE INTERNATIONAL SNOWMOBILE          )
    MANUFACTURER'S ASSOCIATION,    )
    et al.                                              )
                                         )
    Defendant-Intervenors.                    )
_____)

G:/101238/12/00004115.DOC

## <u>TABLE OF CONTENTS</u>

I.    ARGUMENT ...................................................................................................................1

      A.    The NPS's Decision To Allow Limited Numbers Of Recreational
           BAT Snowmobiles Onto Portions Of Yellowstone's Road System
           Was Reasonable, Consistent With The Agency's Broad Discretion
           And Entitled To Deference ......................................................................................1

      B.    Plaintiffs' Absolutist Reading Of NPS's Statutory Mandate
           Cannot Be Sustained ...............................................................................................3

      C.    Plaintiffs Ignore Both The Modern-Day Reality And The History
           Of Yellowstone National Park Management ...........................................................5

      D.    Defendant Intervenors' Position Here Is Entirely Consistent With
           Its Position In Related Wyoming Litigation ...........................................................6

II.   CONCLUSION ...............................................................................................................7

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>BNSF Railway Co. v. Surface Transp. Board</u>
526 F.3d 770, 781 (D.C. Cir. 2008) ...................................................................................1

<u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council</u>
467 U.S. 837, 845 (1984)...................................................................................................4

<u>Daingerfield Island Protection Society v. Babbitt</u>
40 F.3d 442, 446 (C.D. Cir. 1994) .....................................................................................4

<u>EarthLink, Inc. v. FCC</u>
462 F.3d 1, 12 (D.C. Cir. 2006)......................................................................................2, 3

<u>FCC v. WNCN Listeners Guild</u>
450 U.S. 582, 594 (1981)....................................................................................................2

<u>Marsh v. Or. Natural Res. Council</u>
490 U.S. 360 at 378 (1989).................................................................................................2

<u>The Lands Council v. McNair</u>
No. 07-35000, 2008 WL 2640001 at p. 25 (9th Cir. July 2, 2008)....................................2

<u>The Wilderness Society v. Norton</u>
434 F.3d 584, 596-97 (D.C. Cir. 2006)..............................................................................4

<u>Wisconsin Pub. Power, Inc. v. FERC</u>
493 F.3d 239, 260 (D.C. Cir. 2007) ...................................................................................2

**Statutes**

1916 National Park Organic Act, 16 U.S.C. § 1 .........................................................1, 3, 4

1872 Yellowstone Park Act, 16 U.S.C. § 21 <u>et</u> <u>seq.</u> ......................................................3, 4

G:/101238/12/00004115.DOC

**DEFENDANT INTERVENORS' REPLY MEMORANDUM IN
SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Defendant Intervenors International Snowmobile Manufacturer's Association, American

Council of Snowmobile Associations, BlueRibbon Coalition, Inc., and Teri Manning (collectively

"Defendant Intervenors" or "Snowmobilers"), through counsel and pursuant to the Federal Rules

of Civil Procedure and the Local Rules and Orders of this Court, hereby submit their Lodged

Reply Brief in Support of the Federal Defendants' Motion for Summary Judgment in this

consolidated action.

Plaintiffs' Reply Briefs (ECF Doc. Nos. 61 and 62) make four fundamental errors

regarding the law, the facts, and the positions of the Defendant Intervenor Snowmobilers.  Each

of these issues is addressed below.

## I.     ARGUMENT

### A.     The NPS's Decision To Allow Limited Numbers Of Recreational BAT Snowmobiles Onto Portions Of Yellowstone's Road System Was Reasonable, Consistent With The Agency's Broad Discretion And Entitled To Deference

As Defendant Intervenors explain at length in their Opposition Brief and *supra*, and as

courts have overwhelmingly acknowledged, the NPS has broad discretion to permit recreation

that it determines, in its discretion, will not significantly impair park resources.  See Defendant

Intervenors' Opposition Brief at 14-17 (ECF Doc. No. 56).  In so doing, the NPS fulfills its dual

statutory mandate to conserve park resources and provide for visitor use and enjoyment.  See id.;

1916 National Park Organic Act, 16 U.S.C. § 1.

The deference owed to the NPS here is especially high since the decision made involves

high levels of agency technical expertise in predicting snowmobile impacts.  BNSF Railway Co.

1

v. Surface Transp. Board, 526 F.3d 770, 781 (D.C. Cir. 2008) (declining to get involved in

parties' "hyper-technical fray"); Wisconsin Pub. Power, Inc. v. FERC, 493 F.3d 239, 260 (D.C.

Cir. 2007).  "[A]n agency's predictive judgments about areas that are within the agency's field of

discretion and expertise are entitled to particularly deferential review, as long as they are

reasonable[.]" FCC v. WNCN Listeners Guild, 450 U.S. 582, 594 (1981); EarthLink, Inc. v.

FCC, 462 F.3d 1, 12 (D.C. Cir. 2006) (same); The Lands Council v. McNair, No. 07-35000,

2008 WL 2640001 at p. 25 (9th Cir. July 2, 2008) citing EarthLink, 462 F.3d at 12.  Furthermore,

when an agency faces conflicting views among specialists, it has the discretion to rely on the

reasonable opinions of its own qualified experts.  Marsh v. Or. Natural Res. Council, 490 U.S.

360 at 378 (1989).

Plaintiffs dispute the NPS's reliance on particular studies, analysis, methodologies and

metrics regarding air quality, soundscapes, and wildlife to reach the conclusion that continued

limited recreational BAT snowmobile use will not impair Park resources.  In so doing, Plaintiffs

argue that the Court should second-guess the expert judgment of the agency regarding which

methodologies and impact evaluation metrics were appropriate.  In fact, NPS made technical and

reasoned choices to use historic conditions as a baseline, to utilize a park-wide metric for

measuring soundscape impacts, to select which sound methodology to rely on, to use a park-wide

metric for measuring air quality impacts, and to measure wildlife impacts based on significant

population-level impacts.  Plaintiffs don't like these expert methodological choices and

effectively ask the Court to pick different scientific methodologies and metrics for NPS to

employ.[1]  These are precisely the types of judgments that agencies are entrusted to make due to

their superior technical and scientific expertise in regard to these scientific matters.  Marsh, 490

---

[1] For example see Greater Yellowstone Coalition ("GYC") Reply Brief at 30-32, 35-39, ECF Doc. No. 62; and
National Parks Conservation Association ("NPCA") Reply Brief 24, 26-39, ECF Doc. No. 61.

at 378; <u>EarthLink</u>, 462 F.3d at 12.  The Court has no basis for imposing Plaintiffs' preferred

methodologies and metrics and should extend the special deference due the NPS regarding these

scientific choices.  Accordingly, the Court should reject Plaintiffs' invitation to usurp the NPS's

scientific decision-making prerogatives.

> **B.     Plaintiffs' Absolutist Reading Of NPS's Statutory Mandate Cannot Be Sustained**

NPCA argues that the 1872 Yellowstone Act (16 U.S.C. § 21 <u>et seq.</u>) (and subsequent

1894 and 1926 amendments) mandates maintenance of "natural conditions" in Yellowstone and

that any disturbance of these conditions (e.g., disturbance of natural soundscapes, welfare of

individual animals, etc.) is barred by law.  NPCA's Opening Brief (ECF Doc. Nos. 48-2 in action

no. 07-2111 and 43-1 in action no. 07-2112) at 32-33, 35.  This alleged absolutist non-

disturbance mandate is further imposed, argues NPCA, by the 1916 Organic Act's statement of

purpose, in 16 U.S.C. § 1, to "conserve the scenery and natural and historic objects and the wild

life therein and to provide for the enjoyment of the same in such manner and by such means as

will leave them unimpaired for the enjoyment of future generations."  <u>See</u> NPCA Reply Brief at

18; NPCA Opening Brief at 34-37.

An interpretation that these statutes require complete maintenance of "natural conditions"

and no disturbance of those conditions would be a breathtaking radical transformation of these

century old laws.  Yellowstone's "natural conditions" have been significantly disturbed for over

a century by a 350 mile road system, four hotels, hundreds of guest cabins, gas stations,

restaurants, stores, visitor centers, Ranger stations, parking lots, employee housing, utility

infrastructure, maintenance yards, and millions of visitors and their autos, trucks, SUVs and

RVs.  Indeed,  Yellowstone was opened to automotive traffic in 1916 when the Organic Act

passed and before the 1926 amendment to the Yellowstone Act yet Congress never suggested

that the disturbance associated with autos violates these statutes.  Adoption of NPCA's

outlandish interpretation would set a precedent that would compel elimination of all of these

disturbing structures and activities in order to restore Yellowstone to its "natural condition."

Congress has never indicated any support for such a radical reading of these Park statutes and the

Court should similarly reject NPCA's novel (but enormously consequential) argument.

      In fact, as set forth in the 1916 Act, the NPS has an affirmative duty to provide for

enjoyment of the parks even if such enjoyment produces disturbance and less than natural

conditions.  See 16 U.S.C. § 1.  The only impacts barred are those that rise to the level of

"impairment" of park resources.[2]  Id.  The term "impairment" is ambiguous, and is defined

through the NPS's Policies.  The agency's interpretation of the ambiguous statutory term

"impairment" is entitled to deference.  See Chevron, U.S.A., Inc. v. Natural Resources Defense

Council, 467 U.S. 837, 845 (1984).  And as is also well established, NPS determinations

regarding "impairment" are an exercise of its "broad discretion".  Daingerfield Island Protection

Society v. Babbitt, 40 F.3d 442, 446 (C.D. Cir. 1994).

      Plaintiffs' misplaced reliance on the NPS Management Policies for their argument that

the 2007 Winter Use Rule allows statutorily forbidden "impairment" of Park resources is also

misplaced.  Those Management Policies themselves are not enforceable against the NPS and do

not limit the NPS's discretion regarding how its statutory mandate should be carried out on the

ground in Yellowstone.  See The Wilderness Society v. Norton, 434 F.3d 584, 596-97 (D.C. Cir.

2006).  Plaintiffs' radical absolutist reading of the Yellowstone Act and the Organic Act, and its

conclusion that continued limited recreational BAT snowmobile access is statutorily proscribed,

---

[2] Plaintiffs continue to argue that the Court should reject the NPS's determination, based on the administrative record, that the impacts of continued limited recreational BAT snowmobiling in Yellowstone do not constitute "impairment" of park resources.  NPCA Reply Brief at 22; NPCA SJ Brief at 35-37.  However, as discussed at length in Defendant Intervenors' Opposition Brief at 18-27, the NPS's conclusion to the contrary is supported by abundant evidence in the administrative record and is entitled to deference.

4

is at odds with the statutory language, the deference owed to the NPS's interpretations of those statutes, and the broad discretion of the NPS to make non-impairment determinations and the agency discretion to implement its Policies.

### C.     Plaintiffs Ignore Both The Modern-Day Reality And The History Of Yellowstone National Park Management

GYC argues that Defendant Intervenors' reference to Yellowstone's "two parks" is a "striking innovation" that "cannot be reconciled with Park Service mandates." GYC Reply Brief at 12. GYC's statements evidence a fundamental misunderstanding of how Yellowstone, in fact, was developed and is managed, misunderstands Defendant Intervenors' position and continues to ignore the NPS's broad discretion in providing for statutorily mandated visitor use and enjoyment while assuring conservation of park resources.

Viewing Yellowstone, for management purposes, as effectively "two parks" is not, as Plaintiffs imply, a recent invention for litigation purposes. It was put forth by Defendant Intervenors in their comments on the proposed rule during the rulemaking process, see AR at 121348, and is simply a realistic description of how Yellowstone has been managed since the late 1800's construction of the historic road system and the construction of the extensive visitor facility infrastructure within the Park. See, e.g., FEIS, AR 117160, at 31, Figure 2-1. Indeed NPCA and GYC acknowledge this reality when they recognize that the majority of winter visitors to the Park congregate on or in the immediate vicinity of the Park's road system, and that the backcountry is relatively unimpacted by human activity. See GYC Opening Brief at 36-9; NPCA Opening Brief at 14, 16-18. See also Defendant Intervenors' Opposition Brief at 22-23.

The developed area around the road system is, and has been for nearly a century, the realm of human visitors, including human and machine noise, pollution, construction, buildings, roads, utility infrastructure, and all other incidents of human occupation, transportation, and

commerce.  The backcountry, on the other hand, is free from permanent human occupation (including the roads, buildings, and other incidents of human civilization found near the Yellowstone road system) and offers outstanding opportunities for isolation, quiet, and solitude. Defendant Intervenors do not, as GYC erroneously states, argue that "park resources and values have been irretrievably lost in Yellowstone's most-visited regions, allowing such areas to be written off in furtherance of snowmobiling[.]"  GYC Reply Brief at 12.  Defendant Intervenors simply make the fact-based observation that the NPS has historically managed Yellowstone recognizing that visitor human activity, year-round, has impacts around the road system that are not felt in the backcountry, and that activities including extensive visitor automotive traffic, road work, construction, commerce, tourism, and limited recreational BAT snowmobile use are acceptable and do not impair park resources.  This determination is reasonable, supported by the administrative record, and is entitled to deference.

### D.    Defendant Intervenors' Position Here Is Entirely Consistent With Its Position In Related Wyoming Litigation

NPCA argues, incorrectly, that Snowmobilers' arguments in the Wyoming litigation contradict their arguments here.  There is no contradiction and Snowmobilers' position in Wyoming is entirely consistent with its position here.

Snowmobilers argue here that NPS's decision to continue to allow heavily restricted BAT snowmobile usage on portions of the Yellowstone National Park road system is supported by the record, an exercise of the agency's broad discretion, entitled to deference, and should be upheld. Snowmobilers oppose the position of Plaintiffs, who would ban all BAT snowmobiles from the Park roads.  In this case, Snowmobilers make no argument regarding the particular numerical limits in the rule or any other limits on snowmobile access.

In Wyoming, Defendant Intervenors assert that two specific aspects of the 2007 Winter Use Rule are arbitrary and capricious and should be remanded to the NPS – the specific numerical limit of 540 recreational BAT snowmobiles per day and the requirement that all recreational snowmobilers be accompanied by commercial guides. The 540 daily limit represents an arbitrary change in course from the prior limit of 720 BAT snowmobiles per day, a change that is neither adequately justified by the agency nor adequately supported by the administrative record as that record provides support for limits of 720 or 1028 daily. The commercial guide requirement is not adequately justified by the agency nor supported by the record, and has arbitrary discriminatory impacts on local citizens and other winter Park users who can, and should, be permitted to visit the Park without a guide. These arguments, addressed to two specific issues, are not at all inconsistent with Defendant Intervenors' arguments here.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant the Federal Defendants' motion for summary judgment and deny the Plaintiffs' motion for summary judgment.

Submitted this 1st day of August, 2008.

BIRCH HORTON BITTNER & CHEROT, P.C.

Respectfully submitted,

/s/ William P. Horn
William P. Horn (D.C. Bar No. 375666)
David E. Lampp (D.C. Bar No. 480215)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027
whorn@dc.bhb.com; dlampp@dc.bhb.com

*Attorneys for Defendant and Cross-Claim Plaintiff Intervenors International Snowmobile Manufacturers Association, American Council of Snowmobile Associations, BlueRibbon Coalition, Inc., and Teri Manning*

G:/101238/12/00004115.DOC

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 1st day of August, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means. I further certify that I caused correct copies of the foregoing to be served by placing the same in the U.S. first class mail, postage prepaid, addressed as follows:

Barry A. Weiner
Guillermo A. Montero
Luther L. Hajek
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044

Jeffrey A. Taylor, Esq.
United States Attorney for the District of Columbia
555 Fourth Street, NW
Washington, DC  20530

The Honorable Dirk Kempthorne
Secretary
United States Department of the Interior
1849 C Street, NW
Washington, DC  20240

The Honorable Mary Bomar
Director, National Park Service
1849 C Street NW
Washington, DC  20240

David S. Baron
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC  20036

Douglas L. Honnold
Sean M. Helle
Earthjustice
209 South Willson Ave.
Bozeman, MT  51715

                                        _/s/ David E. Lampp_____
                                        David E. Lampp

9

G:/101238/12/00004115.DOC