**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREATER YELLOWSTONE COALITION, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DIRK KEMPTHORNE, *et al.*,<br><br>    Defendants. | Civ. No. 07-2111 (EGS) |
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>    Defendants. | Civ. No. 07-2112 (EGS) |

**GREATER YELLOWSTONE COALITION PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF GREATER YELLOWSTONE COALITION PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

The Greater Yellowstone Coalition plaintiffs submit this supplemental brief in response to questions posed by the Court at the opening of its August 27, 2008 hearing on the parties' cross-motions for summary judgment.

Six issues were identified by the Court for discussion by the parties: (1) whether the administration had a reasoned basis for concluding that 540 snowmobiles can and would be allowed within Yellowstone each day, and, relatedly, whether the government's efforts to defend

a lesser number are supported by evidence demonstrating that snowmobile usage will not, in fact, increase under the administration's plan; (2) whether the administration offered a reasoned explanation for its determination that the challenged winter use plan will have only "acceptable" adverse impacts and, as a result, prove consistent with the Park Service's overriding conservation mandate; (3) whether the administration placed inappropriate reliance on noise modeling results underestimating the sound impacts of the challenged winter use plan; (4) whether there are any guarantees that the Park Service will take management action in response to violations of the challenged plan's adaptive management thresholds; (5) whether the challenged winter use plan will, in fact, reduce audibility relative to existing conditions within the Park; and (6) whether compliance with Clean Air Act National Ambient Air Quality Standards ("NAAQS") demonstrates compliance with the Park Service's obligation to conserve Yellowstone's air.

With respect to the challenged regulation's authorization of expanded snowmobile use within Yellowstone, the administration has failed to offer a reasoned explanation for both its decision to allow 540 snowmobiles within the Park each day and its determination that Park Service mandates would not be violated as the result of such a doubling of snowmobile numbers already in violation of the administration's own noise and air quality thresholds.  See, e.g., GYC Mem. in Supp. at 29-31 (noting the absence of a "carrying capacity analysis" or other explanation for the plan's 540-snowmobile cap); see also, e.g., GYC Reply Br. at 2-10, 19-29. While federal defendants contend (for the first time in their reply brief) that the plan's 540-snowmobile limit was established with the "intention" of keeping snowmobile use to levels seen in recent winter seasons—during which snowmobile numbers peaked at 542—the documents identified in support of this contention do not demonstrate such a purpose.  See Fed. Reply Br. at 11, 22 (citing 2007 ROD and AR 120174); cf. Fed. Br. at 23.  The administration's Record of

Decision, for one, no more than references the 2006-2007 season's 542-snowmobile "peak" as one of two "point[s] of comparison[.]" 2007 ROD at 20 ("[T]his decision limits the number of snowmobiles to 540 per day, in comparison to the historical average of 795 per day. As a point of comparison, the winter of 2006-2007 saw an average of 290 snowmobiles per day and a single peak day of 542, slightly higher than each of the previous two winters."). The other document cited by the government—a September 24, 2007 winter use planning "update"—itself recognizes the increase in snowmobile use provided for under the challenged regulation, stating that the rule's 540-snowmobile limit "is similar to [the Park's] peak day last year (542 on 12/28/2006) but <u>would allow for some increase in use from last winter's average</u> of 290 snowmobiles a day." AR 120174 at 4 (emphasis added). Had the administration intended to limit snowmobile numbers to recent averages, "in keeping with the recommendations of the White and Borkowski studies[,]" Fed. Reply Br. at 22, it could have promulgated a regulation doing so. It did not. Accordingly, it must defend the regulation actually at issue in this case.

     Rather than supporting federal defendants' contention that snowmobile use is unlikely to increase under the challenged winter use plan, the administration's own environmental analysis indicates that the reduced snowmobile numbers of recent winters were largely the product of factors unlikely to persist under a long-term winter use plan. According to the FEIS, "[t]he ongoing litigation during the winter of 2003-2004 brought a great deal of confusion about whether the parks were even open and what modes of transportation were allowed in them." FEIS at 153. Moreover, "[t]he uncertainties brought on by court decisions and the short duration of the temporary plan … prevented the [Park Service] from offering a business opportunity to other companies who might be interested in operating and providing guide services in the winter." <u>Id.</u> Such confusion and uncertainty would be avoided under the administration's long-

term plan.  See id. ("When a long-term decision is reached, business opportunities commensurate with the decision of that plan can be offered, and businesses will be chosen though a competitive process."); see also id. (noting that "warmer and drier-than-normal conditions" in 2002-2003 and 2004-2005 also reduced numbers).  In light of historic snowmobile numbers and the recent rebound in snowmobile use, see, e.g., id. at 154, federal defendants' contention that usage levels are unlikely to increase is at odds with the record.

As to all remaining issues identified by the Court, the Greater Yellowstone Coalition plaintiffs—for brevity's sake—incorporate the points they set forth in their prior briefs and at oral argument.

With respect to the Organic Act's conservation mandate, federal defendants' contention that the mandate is satisfied by the administration's "no unacceptable impacts" determination disregards both the limits of the "unacceptable impacts" standard, which was designed to implement the Park Service's independent non-impairment mandate, and the arbitrariness of the administration's declaration that the challenged plan will result in only acceptable impacts.  See, e.g., GYC Reply Br. at 14-22.

With respect to the noise analysis, the administration arbitrarily relied upon modeling results underestimating the noise impacts of the challenged plan.  See, e.g., GYC Mem. in Supp. at 38 n.12.

With respect to the promise of adaptive management, the administration has already declined to take management action in response to violations of its own adaptive management thresholds—opting, instead, to arbitrarily weaken the thresholds.  See, e.g., GYC Reply Br. at 20-21.

With respect to the challenged regulation's purported soundscape benefits, the

administration's "total park" metric and calculation obscure both the extent of the plan's impacts and the significance of those impacts relative to other considered alternatives. See, e.g., GYC Reply Br. at 32-34.

Finally, with respect to the administration's reliance on nationwide air quality standards to assess compliance with the Park Service's obligation to conserve Yellowstone's air—despite the fact that NAAQS were satisfied within the Park under historic levels of snowmobile use that the administration admits yielded an impairment of Park resources, see FEIS at 94-95—federal defendants have acknowledged that such standards are incapable of ensuring that Yellowstone's resources receive the requisite degree of protection. Fed. Reply Br. at 20; see also, e.g., GYC Reply Br. at 35-36.

Respectfully submitted this 29th day of August, 2008.

       /s/   Sean M. Helle
Douglas L. Honnold (D.C. Bar # 468323)
dhonnold@earthjustice.org
Sean M. Helle (D.C. Bar # 490085)
shelle@earthjustice.org
Earthjustice
209 South Willson Avenue
Bozeman, MT  59715
(406) 586-9699
Fax: (406) 586-9695

David S. Baron (D.C. Bar # 464222)
dbarron@earthjustice.org
Earthjustice
1625 Massachusetts Ave., NW, Ste. 702
Washington, DC 20036
(202) 667-4500

*Attorneys for Plaintiffs*
*Greater Yellowstone Coalition, et al.*