IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREATER YELLOWSTONE COALITION, et al., <br><br>          Plaintiffs, <br><br>      v. <br><br> DIRK KEMPTHORNE, et al., <br><br>          Defendants. | Case No. 07-cv-2111 (EGS) |
| NATIONAL PARKS CONSERVATION ASSOCIATION, <br><br>          Plaintiff, <br><br>      v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; NATIONAL PARK SERVICE, <br><br>          Defendants. | Case No. 07-cv-2112 (EGS) |

**REPLY BRIEF OF PLAINTIFF NATIONAL PARKS CONSERVATION ASSOCIATION IN SUPPORT OF ITS MOTION FOR THIS COURT TO ASSERT CONTINUING JURISDICTION**

The Federal Government Defendants misapprehend the basis for NPCA's motion; they appear to take the motion as an affront to the good faith of the Federal Government in seeking to comply with this Court's Order. But no affront was intended. We respect the current leadership of the NPS and its desire to comply with the Court's guidance. NPCA's motion is directed instead at Intervenor-Defendant International Snowmobile Manufacturers Association ("ISMA") and to the need for action by this Court to protect the integrity of its Order in the face of

collateral attacks by ISMA and the other Wyoming Petitioners, the State of Wyoming and Park County, Wyoming.  Those attacks threaten to impede, or even prevent, the Federal Defendants from following this Court's Order and the guidance it provided.  By granting NPCA's motion, this Court can retain jurisdiction over ISMA, permitting injunctive relief if needed to prevent ISMA from continuing those efforts.

### A.    NPCA Has Demonstrated Good Cause for This Court to Retain Continuing Jurisdiction

Both the Federal Defendants and ISMA argue that NPCA has failed to demonstrate why there is a need for this Court to retain jurisdiction, as if NPCA based its motion on concern about good faith of the Federal Defendants' compliance rather than on the efforts by ISMA to thwart and undermine this Court's Order.  *See* Federal Defendants' Response, at 3 (citing inapplicable cases addressing, not continuing jurisdiction, but undue court involvement in agency proceedings on remand).  But NPCA's motion does not ask this Court to intrude into the NPS's proceedings on remand.  Instead, NPCA has asked the Court to retain jurisdiction so it can, if needed, take steps to protect the integrity of its Order.  NPCA has amply demonstrated the seriousness of the concern that ISMA's actions in the Wyoming Court pose a threat to that Order.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-81 (1994) (recognizing appropriateness of court's retaining jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees").

As demonstrated in NPCA's opening brief and in the exhibits thereto, ISMA and the other Wyoming Petitioners have launched a blatant collateral attack on this Court's Order in their petitions filed in the Wyoming Court.  ISMA asks that Court to rule that the reduction in the number of snowmobiles from 720 per day to 540 per day in the 2007 Rule was arbitrary and capricious and violated governing statutes.  *See* NPCA Opening Mem., at 3-4; ISMA Proposed

Petition, NPCA Ex. 7, at 4-5.  Of course, this Court has already ruled, in striking down the 2007

Rule, that even permitting 540 recreational snowmobiles per day violates those governing

statutes and was arbitrary and capricious.  In its Wyoming petition, however, ISMA is seeking to

undermine that ruling, despite being bound by it.  ISMA seeks an order from the Wyoming Court

which is directly contrary to this Court's rulings, placing the NPS in a conflict between two

federal court orders.

Moreover, ISMA and the other Wyoming Petitioners openly challenge the legal

underpinnings of this Court's Order in their attack on the 2009 Rule.  This Court set forth a

detailed analysis and interpretation of the NPS Organic Act, finding that it requires that

conservation predominate over recreational uses.  *See Greater Yellowstone Coalition v.*

*Kempthorne*, 577 F. Supp. 2d 183, 191-95 (D.D.C. 2008).  But ISMA and the other Wyoming

Petitioners assert, for example, that, in adopting the 2009 Rule, the NPS has violated the

governing statutes "to the extent it interprets those laws to require that conservation of natural

resources predominates by default over public use and enjoyment any time the two values are in

conflict," NPCA Ex. 4, at 4-5 (Park County); that "reducing public recreational snowmobile

access to the Park [violates the Yellowstone Enabling Act by] derogat[ing] ... the Yellowstone

Act's mandate that Yellowstone be 'dedicated and set apart as a public park or pleasuring ground

for the benefit and enjoyment of the people,'" NPCA Ex. 7, at 6 (ISMA Petition); and that

Section 1.4.3 of the NPS's Management Policies "improperly interprets" the Organic Act, NPCA

Ex. 4, at 3 (Park County Petition).

Under these circumstances, it may well become necessary for this Court to issue an order

under the All Writs Act, 28 U.S.C. § 1651, against ISMA's efforts in the Wyoming Court to

thwart this Court's ruling by obtaining an order directing the NPS to do the opposite of what this

Court ordered it to do. *See* cases cited in NPCA Opening Mem. at 6.[1] However, while that Act clearly would give this Court the authority to enter an injunction against ISMA to protect the integrity of the Court's judgment and prevent a party from relitigating the issues decided, issuance of such an injunction would also require that this Court have *in personam* jurisdiction over ISMA. Once final judgment has been entered in this action, ISMA would undoubtedly argue that this Court would no longer have such jurisdiction over ISMA. We cannot know at this time whether such an injunction will be needed. Hopefully, ISMA will withdraw its motion to intervene in the Wyoming proceedings in recognition that, as a party here, it should respect this Court's Order. Or the Wyoming Court could deny ISMA's motion to intervene, which NPCA has opposed. But this Court would preserve its authority to take appropriate action as and when needed by granting the instant motion.

Accordingly, NPCA has clearly made a compelling case for this Court's retention of jurisdiction. That showing is not based on any reason to believe the NPS would not willingly comply with this Court's Order. The showing instead is that actions outside the control of the NPS might preclude or interfere with such compliance.

## B.   NPCA's Motion Would Not Create a Conflict, But Would Be a Step Toward Resolving the Conflict Created by Others

The Federal Defendants argue that a conflict would be created with the Wyoming Court if this Court were to retain continuing jurisdiction. But it is not NPCA that is seeking to create a

---

[1]   *See also, e.g., U.S. v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (upholding injunction against non-party in position to frustrate implementation of court order); *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993) (upholding injunction, by court rendering judgment, against second suit, based "on the long recognized power of courts of equity to effectuate their decrees by injunctions or writs …."); *Small v. Wagemen*, 291 F.2d 734, 736 (1st Cir. 1961) (upholding injunction against party from proceeding in litigation in another federal court).

conflict; it is ISMA and the other Wyoming Petitioners which have done so.  NPCA is seeking the most efficient and effective way to deal with that conflict.

One step NPCA took in that regard was to ask the Wyoming Court to dismiss the actions there on comity grounds or to transfer them to this Court.[2]  We were disappointed and surprised when the Federal Defendants did not support that motion, given that it sought to prevent a conflict with this Court's Order.  Second, we filed the instant motion because we cannot know how or when NPCA's motion in Wyoming will be decided.  If that motion were not granted and were denied _after_ this Court had entered judgment on remand from the Court of Appeals, it might be too late then for NPCA to ask this Court to retain jurisdiction before entering such judgment.

The Federal Defendants assert that they have no preference as to which district court resolves disputes concerning these issues, so long as only one court does so.  But this Court has already done so.  Federal Defendants ignore the fact that, by filing their petition in Wyoming rather than in this Court, ISMA and the other Wyoming Petitioners have sought to place the Federal Defendants in the very conflict between courts they say they fear.  This Court ordered the NPS to proceed in a manner consistent with _this Court's_ decision, which included a detailed evaluation of the Organic Act's role in this dispute.  What would the NPS do, for example, if the Wyoming Court were to accept those Petitioners' arguments that, contrary to this Court's ruling, the NPS has violated the Organic Act by elevating conservation over recreational uses?  The Federal Defendants would then be presented with the very conflicting orders they have repeatedly said that they seek to avoid.  We hope and believe the Wyoming Court will reject

---

[2]    NPCA also moved to dismiss on standing grounds.

ISMA's efforts to convince that Court to enter such an order, but the very fact that ISMA has launched such an effort is cause for significant concern.

Federal Defendants, however, argue that this Court's Order has no continuing effect. They argue that they have already complied fully with this Court's Order by adopting the 2009 Rule.[3] They essentially suggest that they would only have to comply with whatever order is issued by the Wyoming Court. But that argument is obviously flawed. The 2007 Rule which this Court vacated in its Order was a long-term rule. The 2009 Rule, however, is merely an interim rule to govern two seasons while the NPS determines what to do on a long-term basis. The NPS has already commenced the formal process of developing a new long-term rule to replace the long-term 2007 Rule. *See* "National Park Service, Winter Use Plan, Environmental Impact Statement, Yellowstone National Park," 75 FED. REG. 4842 (Jan. 29, 2010). If accepted, the Federal Defendants' position that this Court's Order does not govern further proceedings merely because they adopted a stop-gap rule to apply during those proceedings would make a mockery of that Order.

Federal Defendants also argue that they must comply with orders entered by all Courts, not only this Court's Order. But this Court's Order is the <u>only</u> extant Order applicable to this issue at this time. The Federal Defendants' position on the instant motion and their failure to support NPCA's motion in the Wyoming Court enhance the possibility that there will in fact be conflicting orders in the near future.

---

[3]    That position, we note, is inconsistent with the motion these Defendants filed to dismiss ISMA's appeal from that Order, *i.e.*, that it was not final because it remanded for further proceedings. Under their current position that adoption of the 2009 Rule fully complied with that Order, the grounds for the Federal Defendants' motion in the Court of Appeals had ceased to exist when the 2009 Rule was adopted, before the Court of Appeals acted on that motion.

## C.     The Instant Motion Is Timely

Finally, the Federal Defendants and ISMA argue that this motion is "procedurally flawed" on the ground that it supposedly asks this Court to "reopen and modify its final order." They argue that a motion to "modify an order or judgment" must be made under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure.  But that position is without merit.  First, the time limits set forth in those rules do not apply to NPCA's motion because final judgment has not been entered in these actions.  Rule 58(a) of those Rules requires that a judgment must be set forth in a "separate document," with exceptions not applicable here.  Rule 58(b) prescribes when judgment is deemed to have been entered for purposes of the Federal Rules of Civil Procedure. Rule 58(b)(2) provides that when a separate document is required, as here, judgment is deemed to be entered when it is entered in the civil docket under Rule 79(a) and when certain other events have occurred which have not occurred here.  While the Court signed a separate "Order," it has not entered a "judgment."[4]  Instead, because of the appeals taken from the September 2008 Order, this Court is only regaining jurisdiction when the Court of Appeals issues its mandate, an event which has not yet occurred.  If anything, NPCA's motion anticipated that date, rather than being delinquent.  Second, the instant motion does not ask the Court to amend its Order of September 2008, but to retain continuing jurisdiction in a new order or in the Court's final judgment.

---

[4]     *See* Wright & Miller, 11 FED. PRAC. & PROC. CIV. 2d § 2785 ("To be effective as a judgment it is the separate document known as a judgment that must be entered on the docket.").

**D.      Conclusion**

Accordingly, NPCA respectfully asks this Court to enter an order retaining continuing

jurisdiction in these cases.

Respectfully submitted,

Robert D. Rosenbaum (D.C. Bar No. 090498)
Matthew Roessing
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
Phone:    (202) 942-5862
Fax:       (202) 942-5999

Attorneys for Plaintiff National Parks Conservation
Association

March 8, 2010